**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| E-Z-DOCK, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.1:21-cv-02761-TWP-DML |
| | ) | |
| SNAP DOCK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**DEFENDANT SNAP DOCK, LLC'S MEMORANDUM IN SUPPORT OF ITS**</u>
<u>**MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**</u>

TABLE OF CONTENTS

I.  BACKGROUND ................................................................................................... 1

    A.    The Parties and the Dispute. ................................................................... 1

    B.    The Technology Is Straightforward. ........................................................ 3

II.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE (Per LR 56-1) ........................ 4

III.  LEGAL ARGUMENT ........................................................................................ 5

    A.    Legal Standard ....................................................................................... 6

    B.    The Claim's Plain Meaning Applies: The '178 Patent and Asserted Claim
          29 Disclose and Claim a Bow Stop *Separate from and Mountable to* the
          Port Member. ......................................................................................... 8

          1.    E-Z-Dock's '178 patent only discloses a bow stop that is separate
                from and mounted to the port members. ...................................... 8

          2.    Claim 29 requires that the bow stop be separate from and mountable
                to the port member. ...................................................................... 11

          3.    The prosecution history of the '178 patent confirms claim 29's
                limitations. .................................................................................. 12

          4.    The plain meaning of "separate from and mountable to said port
                member" and "bottom surface of said bow stop being shaped
                complimentarily to said port cradle" ............................................. 13

          5.    E-Z-Dock's commercial embodiment mirrors claim 29. ................. 14

    C.    No Infringement: The Snap Port's Structure Is Fundamentally Different. ........... 15

          1.    The Snap Port is missing claim 29's "bow stop which is separate
                from and mountable to said port member" limitation. ....................... 16

          2.    Prosecution history and claim vitiation bars E-Z-Dock from alleging
                infringement of the "separate from and mountable to" limitation
                under the doctrine of equivalents. ................................................. 18

    D.    No Infringement: The Snap Port Bow Stop Does Not Have a Bottom, Let
          Alone the Claimed Bottom Having a Portion Shaped Complementarily to
          the Port Cradle. ..................................................................................... 21

          1.    The Snap Port also does not literally infringe claim 29's bow stop
                having at least a portion of said bottom surface shaped
                complimentarily to the V-shaped port cradle limitation. ................. 21

i

2.      Prosecution history and claim vitiation bar E-Z-Dock from alleging infringement of the bow stop having a bottom surface shaped complementarily to the V-shaped port cradle limitation under the doctrine of equivalents. ............................................................................ 24

IV.   CONCLUSION ........................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Steel Recovery, LLC v. X-Body Equip., Inc*.,
   808 F.3d 1313 (Fed. Cir. 2015)................................................................................19

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
   811 F.3d 1334 (Fed. Cir. 2016).........................................................................17, 24

*Allen Eng'g Corp. v. Bartell Indus.*,
   299 F.3d 1336 (Fed. Cir. 2002).................................................................18, 20, 24

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
   73 F.3d 1573 (Fed. Cir. 1996)...............................................................................16

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013)...............................................................................17

*Choon's Design, LLC v. IdeaVillage Prods. Corp.*,
   776 F. App'x 691 (Fed. Cir. 2019) .....................................................................7, 21

*CommScope Techs. LLC v. Dali Wireless Inc*.,
   10 F.4th 1289 (Fed. Cir. 2021) ...............................................................................7

*Cook Inc. v. Endologix, Inc.*,
   No. 1:09-cv-01248-TWP-DKL, 2012 U.S. Dist. LEXIS 124295
   (S.D. Ind., Aug. 31, 2012)..................................................................................6, 7

*Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co*.,
   272 F.3d 1365 (Fed. Cir. 2001)..............................................................................18

*Engel Indus., Inc. v. Lockformer Co.*,
   96 F.3d 1398 (Fed. Cir. 1996)................................................................................7

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
   No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526
   (S.D. Ind. Dec. 16, 2010) .......................................................................................6

*Illumina Inc. v. BGI Genomics Co.*,
   No. 20-cv-01465-WHO, 2021 U.S. Dist. LEXIS 162838
   (N.D. Cal. Aug. 27, 2021).................................................................................7, 8

*K-2 Corp. v. Salomon S.A.*,
   191 F.3d 1356 (Fed. Cir. 1999).....................................................................16, 18, 19

*Medgraph, Inc. v. Medtronic, Inc.*,
  843 F.3d 942 (Fed. Cir. 2016).............................................................................7

*Pall Corp. v. Hemasure, Inc.*,
  181 F.3d 1305 (Fed. Cir. 1999).........................................................................18

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)(*en banc*) ......................................................6, 13

*Planet Bingo, LLC v. GameTech Int'l*,
  472 F.3d 1338 (Fed. Cir. 2006)...........................................................19, 20, 24

*Sage Prods. v. Devon Indus.*,
  126 F.3d 1420 (Fed. Cir. 1997)........................................................................6, 19

*Sextant Avionique, S.A. v. Analog Devices, Inc.*,
  172 F.3d 817 (Fed. Cir. 1999)............................................................................20

*SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*,
  983 F.3d 1367 (Fed. Cir. 2021)....................................................................6, 7, 16

*Space Data Corp. v. Alphabet Inc.*,
  No. 16-cv-03260-BLF, 2019 U.S. Dist. LEXIS 90113 (N.D. Cal. May 29, 2019),
  *aff'd* 827 F. App'x 1014 (Fed. Cir. 2020) ........................................................7, 16

*TechSearch L.L.C. v. Intel Corp.*,
  286 F.3d 1360 (Fed. Cir. 2002)........................................................................5, 7

*Waldridge v. Am. Hoechst Corp.*,
  24 F.3d 918 (7th Cir. 1994) ................................................................................6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
  520 U.S. 17 (1997)..............................................................................................19

*Waterloo Furniture Components v. Haworth*,
  467 F.3d 641 (7th Cir. 2006) ..............................................................................6

**Statutes**

Patent Act....................................................................................................................18

**Other Authorities**

LR 56-1 .........................................................................................................................4

Rule 11 .........................................................................................................................2

Rule 36 .........................................................................................................................7

iv

Defendant, Snap Dock, LLC ("Snap Dock"), having moved for summary judgment of noninfringement of its single accused product, the Snap Port, hereby submits this memorandum in support of its motion. The Snap Port product, a floating dock for Jet Skis or personal watercrafts, is alleged to infringe only claim 29 of Plaintiff E-Z-Dock, Inc.'s ("E-Z-Dock") U.S. Patent No. 7,918,178 ("the '178 patent"). This is a straightforward, case-ending issue that should be decided now before E-Z-Dock forces the Court and Snap Dock to waste more resources on this case.

The only patent claim in this case, claim 29, is for a modular docking port with a separate bow stop that is mountable to the port to stop the forward movement of a watercraft. It expressly requires a bow stop that is "separate from and mountable to" the port. In addition, the separate bow stop must also have a bottom surface shaped complementarily to the port member's top surface, so that the bow stop can be mounted to the port.

The accused Snap Port does not have a separate or mountable bow stop allowing the bow stop to be mounted in different configurations on the port. It has a port member with an *integral*, *non-separate*, bow stop. The integral bow stop also does not have a bottom surface, let alone one that is shaped complementary to the top surface of the port member. Infringement is lacking and, therefore, summary judgment is appropriate.

I.     **BACKGROUND**

   A.     **The Parties and the Dispute.**

Snap Dock is an Indiana-based manufacturer of floating dock systems and watercraft ports. (Dkt. 1-4 at 3-4.) Snap Dock entered the floating dock market in 2018, and after receiving positive feedback from consumers, it recently began developing its personal watercraft port, the Snap Port, the only product accused of infringement. (Dkt. 67; Dkt. 67-1.)

Soon after Snap Dock developed its Snap Port, E-Z-Dock sued Snap Dock and its distributor, Golden Manufacturing, Inc., in the Middle District of Florida claiming that Snap Dock's Snap Port infringed three patents, U.S. Patent Nos. 7,069,872 ("the '872 patent"); 7,918,178 ("the '178 patent"); and 8,256,366 ("the '366 patent"), and that Snap Dock and Golden Manufacturing infringed E-Z-Dock's alleged trade dress.[1] (M.D. Fla. DE 1.) After Defendants served a Rule 11 letter on E-Z-Dock, E-Z-Dock filed an Amended Complaint withdrawing its infringement allegations relating to both the '872 and the '366 patents. (M.D. Fla. DE 26.) However, E-Z-Dock refused to withdraw its infringement allegations related to the '178 patent now in suit here, despite Snap Dock repeatedly providing the obvious reasons why E-Z-Dock's infringement allegations were objectively baseless. (Declaration of Tom Leach ("Leach Decl."), Ex. 1[2]  (March 25, 2021 Letter); Leach Decl. Ex. 2 (July 7, 2021 Letter); M.D. Fla. DE 22 (Rule 11 motion filed August 9, 2021); Leach Decl. Ex. 12 (Rule 11 motion served on E-Z-Dock on February 3, 2022).)

Plaintiff served infringement contentions alleging that the Snap Port product infringes only claim 29 of the '178 patent. (Dkt. 21-2; Leach Decl., Ex. 3; Dkt. 67; Dkt. 67-1.) The parties' deadline to identify any disputed claim terms, their construction, and supporting evidence was January 31, 2022. (M.D. Fla. DE 34 at 2; Leach Decl., Ex. 4.) E-Z-Dock's position is that the claim terms do not need construction and that the plain and ordinary meaning applies to all claim terms. (M.D. Fla. DE 50; M.D. Fla. DE 50-1; Leach Decl., Exs. 5-6.) Indeed, E-Z-Dock

---

[1] Snap Dock has filed a 12(c) motion seeking to dismiss that case on the pleadings because E-Z-Dock's alleged trade dress is not protectable because it is functional. That motion has been briefed and is currently before the court.
[2] Exhibits ("Ex.") citied herein are attached to the Declaration of Tom Leach in Support of Snap Dock's Motion for Summary Judgment.

explicitly stated in its claim construction filing that "each of the disputed claim terms should be given its plain and ordinary meaning…."[3] (M.D. Fla. DE 50 at 2; Leach Decl., Ex. 5 at 2.)

E-Z-Dock's patent infringement claim was then severed and transferred to this Court because venue in Florida against Snap Dock for patent infringement was also baseless. (*See* M.D. Fla. DE 43; Dkt. 1.) Plaintiff continues to maintain its baseless patent infringement claim related to claim 29 of the '178 patent in this Court. (Dkt. 67; Dkt. 67-1; Dkt. 1 at 24.) Snap Dock now moves for summary judgment of noninfringement to end this case in its entirety.

### B.    The Technology Is Straightforward.

This patent infringement dispute is about floating watercraft ports. Floating watercraft ports are used to dock boats and other watercraft. As "Jet Skis" and so-called personal watercrafts, PWCs, gained popularity, floating dock manufactures added dock sections, or ports, to accommodate these watercrafts and store them up out of the water:

  

As the photos show, these docks are modular so a dock owner can add more and configure them. There are numerous manufacturers of floating docks and ports in the U.S. alone. (Declaration of Blake Elder ("Elder Decl."), ¶ 21.) The technology has been known for decades and the general concept is no longer patentable. However, many floating dock manufacturers

---

[3] E-Z-Dock did provide alternative "plain and ordinary" constructions in its claim construction filing for the phrases "port member" and "A bow stop which is separate from and mountable to said port member". (M.D. Fla. DE 50-1 at A5, A9.) For the purposes of this motion whether the plain and ordinary meaning applies or E-Z-Dock's alternative constructions apply, the outcome is the same—no reasonable jury could find that the Snap Port infringes claim 29 of the '178 patent.

obtained patents on specific designs of floating watercraft ports and their features. (Elder Decl., ¶ 22.) One example is the following earlier, prior art patent to Dickman, U.S. 7,481,175, which discloses an integral bow stop (a/k/a rub-rail). (Leach Decl., Ex. 7.) To obtain its patent, E-Z-Dock had to distinguish its design from the prior art Dickman patent. As can be seen below in Figure 1 of the Dickman prior art patent, it has a port member (blue) that includes an entrance section (from the water up onto the port member) and a cradle (yellow) having rollers (gray) for supporting the hull of a watercraft. (*Id.*, Fig. 1, 2:46-3:50.) Dickman also discloses a non-removable bow stop (pink) that is integrally formed as part of the port member. (*Id.*, 3:51-57.)



## II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE (Per LR 56-1)

1. Dkt. 1-9 is a true and accurate copy of the only patent in suit, U.S. Patent No. 7,918,178 B2 entitled MODULAR FLOATING WATERCRAFT PORT ASSEMBLY. (*See also* Leach Decl., Ex. 8.)

2. Plaintiff asserted only claim 29 of the '178 patent. (Dkt. 67; Dkt. 67-1; Dkt. 1 at 24.)

3. Exhibit 9 is a true and accurate copy of the prosecution history of the '178 Patent. (Leach Decl., Ex. 9.)

4. During prosecution, E-Z-Dock argued that patent application "[c]laims 8 and 38 [issued claim 29] have been amended such that the 'water craft port' comprises a 'port member' and a 'bow stop'. This . . . ***makes clear that the port comprises the two pieces – the port member or body and the bow stop***." (Leach Decl., Ex. 9 at SNAP000297 (emphasis added).)

5. Exhibit 7 is a true and accurate copy of the prior art reference, U.S. Patent No. 7,481,175 B2 to Dickman, cited in the prosecution history of the '178 Patent. (Leach Decl., Ex. 7)

6. E-Z-Dock's claim construction position is that no claim terms need construction and the plain and ordinary meaning applies to all claim language.[4] (M.D. Fla. DE 50; M.D. Fla. DE 50-1; Leach Decl., Exs. 5-6.)

7. Plaintiff accused only the Snap Port product of infringement. (Dkt. 67; Dkt. 67-1.)

8. Exhibit E-1 consists of true and accurate photographs of the Snap Port product, which has not changed. (Elder Decl., E-1.) A photograph of Snap Dock's accused Snap Port (*Id.* at 1), is shown below:



9. The Snap Port includes an entry port member and an extension port member (*see* above), which are joined end-to-end to form the port. (Elder Decl., Ex. E-1, ¶¶ 6, 9-11).

10. The Snap Port bow stop is integral with the extension port member (*see* above)—it is not separate from or mountable to the port. (Elder Decl., Ex. E-1, ¶¶ 12-13, 15.)

11. The Snap Port bow stop and port member are one piece (*see* above)—not two. (Elder Decl., Ex. E-1, ¶¶ 12-13.)

12. The Snap Port bow stop does not have a bottom surface, let alone one shaped complimentarily to the top surface of the port member. (Elder Decl., ¶¶ 18-19.)

## III.   LEGAL ARGUMENT

The accused Snap Port cannot infringe claim 29 of the '178 patent, and no reasonable jury could find it does. The structure of the accused Snap Port is not disputed. And E-Z-Dock

---

[4] For the purposes of this motion, Snap Dock accepts that the plain and ordinary meaning applies to the claim language.

concedes that no construction of claim terms is needed.[5] (M.D. Fla. DE 50; M.D. Fla. DE 50-1; Leach Decl., Exs, 5-6.) The Court can decide noninfringement on summary judgment because there are no material facts in dispute and no claim construction is necessary. *TechSearch L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). There can be no infringement where even one claim element is missing from the accused device. *SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021). Here, at least two claim elements are missing.

### A.    Legal Standard

Summary judgment must be granted when the evidence shows that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1421-32 (Fed. Cir. 1997); *Cook Inc. v. Endologix, Inc.*, No. 1:09-cv-01248-TWP-DKL, 2012 U.S. Dist. LEXIS 124295, *11 (S.D. Ind., Aug. 31, 2012); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment should not be granted. *Waldridge*, 24 F.3d at 920. The party opposing summary judgment may not rely on the allegations in the pleadings. *Fanimation, Inc. v. Dan's Fan City, Inc.*, No. 1:08-cv-1071-TWP-WGH, 2010 U.S. Dist. LEXIS 134526, at *3 (S.D. Ind. Dec. 16, 2010). Instead, the opposing party "must set forth *specific facts* showing that there is a genuine issue for trial. *Waldridge*, 24 F.3d at 920. Courts regularly grant summary judgment prior to any discovery taking place. *Waterloo Furniture Components v. Haworth*, 467 F.3d 641, 648 (7th Cir. 2006) ("[T]he mere

---

[5] While Snap Dock proposes alternative "plain and ordinary" meaning constructions for various terms (M.D. Fla. DE 50-1) for the purposes of this motion, even applying E-Z-Dock's specific plain and ordinary meaning to the claim terms shows no material facts are in dispute and no reasonable jury could find infringement.

fact that the district court granted [defendant's] summary judgment motion prior to allowing any discovery is irrelevant.").

The determination of patent infringement is a two-step inquiry. *Cook Inc.*, 2012 U.S. Dist. LEXIS 124295, *13. "First the court must construe the asserted patent claims as a matter of law." *Id*; *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc*). "Second, the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by equivalent." *Cook Inc.*, 2012 U.S. Dist. LEXIS 124295, *13. "To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings*, 983 F.3d at 1380; *TechSearch*, 286 F.3d at 1369. ("Summary judgment of noninfringement is also appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial."). "The burden is on a patent owner to show that 'the properly construed claim reads on the accused device exactly.'" *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1298 (Fed. Cir. 2021) (quoting *Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405 (Fed. Cir. 1996)); *see also Cook Inc.*, 2012 U.S. Dist. LEXIS 124295, *13-18.

When the plaintiff takes the position that the claim terms do not need construction and should be given their plain and ordinary meaning, as E-Z-Dock does here, the court may apply that meaning to the accused structure and grant summary judgment where no reasonable jury could find such claim elements are met by the accused device. *Choon's Design, LLC v. IdeaVillage Prods. Corp.*, 776 F. App'x 691, 696 (Fed. Cir. 2019) (affirming district court's grant of summary judgment of noninfringement based on the plain meaning of the claim terms where the specification disclosed only separatable components to facilitate customization and the

accused product included built in components that could not be customized); *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 950 (Fed. Cir. 2016) (affirming grant of summary judgment of noninfringement based on the plain and ordinary meaning of the claim terms); *Space Data Corp. v. Alphabet Inc.*, No. 16-cv-03260-BLF, 2019 U.S. Dist. LEXIS 90113, at *4-6 (N.D. Cal. May 29, 2019) (denying reconsideration on grant of summary judgment of noninfringement under the plain and ordinary meaning of the claim term at issue and rejecting plaintiff's efforts to belatedly seek claim construction to defeat defendant's summary judgment motion), *aff'd* 827 F. App'x 1014 (Fed. Cir. 2020) (Rule 36 affirmance); *see also Illumina Inc. v. BGI Genomics Co.*, No. 20-cv-01465-WHO, 2021 U.S. Dist. LEXIS 162838, at *21-32 (N.D. Cal. Aug. 27, 2021) (granting summary judgment of non-infringement based on the plain meaning of the claim term).

    **B.**    **The Claim's Plain Meaning Applies: The '178 Patent and Asserted Claim 29 Disclose and Claim a Bow Stop *Separate from and Mountable to* the Port Member.**

        *1.*    *E-Z-Dock's '178 patent only discloses a bow stop that is separate from and mounted to the port members.*

E-Z-Dock's '178 patent discloses a watercraft port that includes a port member or members having a cradle (a V-shaped portion in which the hull of the watercraft rests) and a separate bow stop (the portion that stops the watercraft from forward movement). (Dkt. 1-9; Leach Decl., Ex. 8, Abstract.) The watercraft port disclosed in the '178 patent includes a bow stop that is "separate from and mountable to" the port member so that when placed on top of the port member its bottom surface mates with the top surface of the port to stop the watercraft from forward movement. (*Id.*, 2:9-11 ("The bottom surface [of the bow stop] is shaped substantially complementarily to the port upper surface such that the bow stop rests on the port member upper surface").) Recognizing that "[t]here are several manufacturers of floating watercraft ports[,]" and that this concept is not new, the '178 patent focused on a modular "watercraft port/lift

module which allows for greater customization in the design of the port/lift area . . . ." (*Id.*, 1:24-33.) The customization included a repositionable, removable bow stop. (*Id.*, 2:5-23; 8:24-32; 10:4-6; Abstract.)

The "Summary of the Disclosure" section of the patent explains that the customization is accomplished by the use of three separate and distinct pieces: "[t]he system comprises an entry member, an extension member, and a bulkhead (or bow stop)." (*Id.*, 1:39-40.) The entry member and the extension member form the port, and include rollers (gray) and a cradle (yellow) that extends along the length of the port members and is open at both ends. (*Id.*, 1:41-56 (entry member); 1:57-62 (extension member).) The entry and extension members can be connected in series (end to end) or in parallel (side by side), and any number may be used in a single port system. (*Id.*, 1:63-2:3.) The entry member and extension member each include a cradle in their upper surface, highlighted in yellow below, for receiving the watercraft hull. (*Id.*, 1:41-56; 57-62.)



Fig. 1

(Entry Member)

Fig. 9

(Extension Member)

(*Id.*, Figs. 1, 9.) The light-yellow shaded portion of Fig. 5 of the '178 patent, below, shows the opening to the cradle at one end of the port member and Figure 28B shows the separate, mountable bow stop (pink) mounted to the port member closing that opening:



Fig. 5

Fig. 28B

(*Id.*, Figs. 5, 28B, 4:8-11.) When the bow stop is mounted on the port member it fits into the light yellow highlighted portion (cradle opening) closing the opening to the cradle so that the hull of the watercraft is stopped from further forward movement.

The '178 patent discloses two types of bow stops: a full bow stop (Fig. 14) that extends the full width of the port member; and, a small bow stop (Fig. 19). (*Id.*, 2:5-7.) An example of the full bow stop (Fig. 14) and small bow stop (Fig. 19) are shown below:



Fig. 19

Fig. 14

Small Bow Stop

Full Bow Stop

(*Id.*, Figs. 14, 19.) The bottom surface of the bow stops are shaped complementarily to the port's upper surface such that the bow stop fits on top of the port member upper surface. (*Id.*, 2:9-11.) Figures 14 and 15 and 18A and 18B below show various perspective views of a full bow stop that fits on top of the port member and into the port's cradle. Figure 18B shows the bottom perspective view of a full bow stop. The blue shaded area (the bottom of the full bow stop) mates with the top of the port's cradle (again colored yellow). (*Id.*, 9:22-27.)

10



Fig. 14          Fig. 15          Fig. 18A          Fig. 18B

(*Id.*, Figs. 14, 15, 18A, 18B.)

Figures 28B and 27A below show how the removable bow stops mate with the port members fitting into the cradle and closing the opening to the cradle at various locations along the port to block the watercraft from continuing to move forward. In one embodiment, the entry member is configured to be used with the separate, removable bow stop, but without an extension member. (*Id.*, 12:37-39.)  This is shown on the left below in Fig. 28B:



Fig. 28B

Fig. 27A

(*Id.*, Figs. 27A, 28B.)

### 2. Claim 29 requires that the bow stop be separate from and mountable to the port member.

Claim 29 is reproduced below, and requires the italicized key claim limitations important to this motion:

29. A floating watercraft port comprising:

11

> a port member having an upper surface, a bottom surface, side surfaces, a front surface and a back surface;
>
> a cradle being formed in at least a part of said upper surface;
>
> said cradle extending rearwardly from said front surface;
>
> wherein said front surface defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle and said back surface of said port member defines an entrance to said cradle;
>
> said cradle being defined by a pair of opposed inwardly sloping walls; a plurality of roller sockets positioned along said cradle walls and rollers received in said roller sockets; and
>
> *a bow stop which is separate from and mountable to said port member* at the front of said port member; said bow stop comprising a top surface, a front surface, side surfaces, a back surface *and a bottom surface; at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle at the front of said port member.*

(*Id.*, 16:26-46 (emphasis added).) In other words, claim 29 requires a bow stop that is separate from and mountable to the port member. (*Id.*) Claim 29 also requires that the bow stop's bottom surface be shaped complementary to the V-shaped cradle. (*Id.*) As is shown in every figure and described throughout the '178 patent, the repositionable bow stop mates to the top surface of the port member to close the opening to the port member's cradle at the front of the port member. (*See generally id.*)

### 3. The prosecution history of the '178 patent confirms claim 29's limitations.

As seen in the prosecution history in the Patent Office, claim 1 of E-Z-Dock's original patent application attempted to broadly claim a watercraft port having a cradle formed in at least part of the top surface and a separate bulkhead mountable to the port. (Leach Decl., Ex. 9 at SNAP000046). The examiner rejected claim 1 as obvious in view of prior art to Dickman, U.S. Patent No. 7,481,175. (*Id.* at SNAP000130-131.) In response, E-Z-Dock canceled claim 1. (*Id.* at SNAP000162, SNAP000172.) E-Z-Dock later reintroduced original application claim 1 as new application claim 38, which later issued as the claim at issue here, claim 29. But E-Z-Dock

significantly amended it attempting to overcome the rejections based on Dickman.[6] (*Id.* at SNAP000245.) Notably, E-Z-Dock amended application claim 38 to require that the bow stop be removably mounted to the port and that the bow stop have a bottom surface at least a portion of which is shaped complementarily to the port cradle. (*Id.*)

However, application claim 38 was again rejected as being unpatentable over Dickman. (*Id.* at SNAP000257-58.) To get its patent, E-Z-Dock further narrowed the claim by amending application claim 38 requiring a port and a separate bow stop: "Claims 8 and 38 [claim 29] have been amended such that the 'water craft port' comprises a 'port member' and a 'bow stop'. This . . . ***makes clear that the port comprises the two pieces – the port member or body and the bow stop***." (*Id.*, Ex. 9 at SNAP000297 (emphasis added).)

### 4. The plain meaning of "separate from and mountable to said port member" and "bottom surface of said bow stop being shaped complimentarily to said port cradle"

Thus, when looking at the intrinsic record, namely the claim language, the specification, the drawings, and the prosecution history, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc*), the plain language controls. E-Z-Dock agrees. E-Z-Dock's claim construction position is that no claim terms need construction and the plain and ordinary meaning applies to all claim language. (M.D. Fla. DE 50, 50-1; Leach Decl., Exs. 5-6.)

The meaning of the claim language "a bow stop which is separate from and mountable to said port member" is evident. And it excludes a "bow stop" that is integral with a port member. Likewise, the meaning of the claim language, "*bottom surface of said bow stop being shaped complementarily to said port cradle* such that when said bow stop is mounted to said port member, said *bow stop closes said opening to said cradle at the front of said port member*" is

---

[6] When claims are amended during prosecution, the underlined language designates what is added.

likewise clear. It required the "bow stop" to be separate and as such have a "bottom surface," and that the bottom surface be "complimentary" (inverse in surface shape) so that it "closes," not merely blocks an opening to the cradle. This also underscores the predicate requirement that the "bow stop" be "separate" in order to have the further required "bottom surface...."

### 5.   *E-Z-Dock's commercial embodiment mirrors claim 29.*

E-Z-Dock's commercial embodiment of the '178 patent is the EZ Port Max, which is described here for background context. (Elder Decl., Ex. E-2 at 4 (identifying '178 Patent as covering the EZ Port Max product line).) It includes (from left to right) the EZ Port Max Extension member, EZ Port Max Entry member, the EZ Port Max Full Bow stop, and the EZ Port Max Small Bow stop:



(https://www.ez-dock.com/products/pwc-port/.) These components are identical to what is disclosed in the '178 patent. The EZ Port Max includes a bow stop (full or small) that is separate from and mountable to the top surface of the port member. The bottoms of both bow stops are shaped complementarily to the top surface of the port member. When placed on top of the port member, the bow stop's bottom surface mates with the top surface of the port's cradle, closing the opening to the cradle at the front of the port to stop the watercraft from forward movement.




(E-Z-Dock's Commercial Embodiment of the '178 Patent)

### C.   No Infringement: The Snap Port's Structure Is Fundamentally Different.

The structure of the accused Snap Port, which is not in dispute, is shown below:



(Elder Decl., Ex. E-1, ¶ 4.) It includes an entry port section and an extension port section, which are joined end-to-end to form the port. (Elder Decl., Ex. E-1, ¶¶ 8-11.) Importantly, the bow stop is integral with the port—it is not separate from or mountable to the port. In other words, the bow stop and port are one piece—not two. (Elder Decl., ¶¶ 12-13, 15.)

The bow stop is not separate from or mountable to the port, but rather is molded as part of a port section. (Elder Decl., ¶ 12.) It is not repositionable and cannot be removed from the port as it is integral with the port. (Elder Decl., ¶¶ 12-13, 15.) Snap Dock advertises the Snap Port as having an "integrated bow stop" in its marketing brochures and on its website:





(Dkt. 1-4 at 10; Dkt. 1-7 at 4; Elder Decl., Exs. E-3, E-4 at 9, ¶ 13.) **Even E-Z-Dock initially admitted that Snap Dock's accused Snap Port has a "built in bow stop," which is how it characterized the bow stop in its initial letter to Snap Dock**. (Leach Decl., Ex. 10 at 8.) As can be seen in the above photo of the Snap Port on the right, the bow stop is the raised portion formed as part of the port. (Elder Decl., ¶ 4.)

The Snap Port has a port member with an integral, non-removable bow stop. It does not have the claimed "bow stop which is separate from and mountable to said port member." (Elder Decl., ¶¶ 12-13, 15.)

Because the Snap Port has an integral, non-removable bow stop, it also does not have the claimed bow stop bottom surface, let alone a bottom surface that is shaped complementary to said port cradle, i.e. the upper surface of the port member. (Elder Decl., ¶ 18.)

### 1.   *The Snap Port is missing claim 29's "bow stop which is separate from and mountable to said port member" limitation.*

The Snap Port's bow stop and port member are one piece—the opposite of the claim limitation requiring the bow stop to be "separate from and mountable to" the port member. Because E-Z-Dock concedes that the plain and ordinary meaning applies, the Court can compare the claim language to the accused device, which is not disputed, and grant summary judgment of non-infringement. *SIMO Holdings*, 983 F.3d at 1378-81 (reversing finding for plaintiff and

awarding judgment of non-infringement based on plain meaning of claim); *Space Data Corp*,

2019 U.S. Dist. LEXIS 231718, at *14-21; *see also K-2 Corp. v. Salomon S.A*., 191 F.3d 1356,

1362 (Fed. Cir. 1999) (quoting *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573,

1578 (Fed. Cir. 1996).

      The plain language of claim 29 requires that the bow stop be a separate piece from the

port so that it can be mounted thereto at different locations making the modular port and bow

stop customizable. It cannot be one-piece or integrated with the port, as was the Dickman prior

art from which the claim was amended to avoid. The plain and ordinary meaning of "separate"

means "to set or keep apart: detach," which is the opposite of fixed or integrated. (Leach Decl.,

Ex. 11, *Separate*, Webster's Third New International Dictionary of the English Language

Unabridged (2002).) It cannot mean integrated or one-piece without vitiating the claim

limitation. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1342 (Fed. Cir.

2016) (applying claim vitiation). This is especially true given the arguments E-Z Dock made to

the USPTO to get the '178 patent allowed. (Leach Decl., Ex. 9 at SNAP000297.) Thus, a "bow

stop which is separate from and mountable to said port member" cannot be integrated with the

port member as one unitary piece. It must be at least two distinct pieces, a port and a separate

bow stop, which is exactly what E-Z-Dock argued to the Patent Office to gain allowance. *See*

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095-97 (Fed. Cir. 2013) (applying

prosecution disclaimer).

      E-Z-Dock concedes that the phrase "port member" also has a plain and ordinary

meaning: "a structure for supporting a watercraft hull." (Leach Decl., Ex. 6 at A-5.) The

language of claim 29 itself defines what the "port member" includes, namely a cradle "defined

by a pair of opposed inwardly sloping walls; a plurality of roller sockets positioned along said

cradle walls and rollers received in said roller sockets." (Leach Decl., Ex. 8, 16:34-36.) Thus, using E-Z-Dock's plain and ordinary construction, the bow stop must be separate from and mountable to the "structure that supports the watercraft hull." (Leach Decl., Ex. 6 at A-5.) E-Z-Dock's own position, and the claim language, excludes a bow stop integral with the "structure that supports the watercraft hull." No reasonable jury could find infringement because the accused Snap Port's bow stop is integral with the structure that supports the watercraft hull, i.e. the port member. It does not include a bow stop "separate from and mountable to said port member," and cannot literally infringe.

*K-2 Corporation v. Salomon S.A.* is instructive. 191 F.3d at 1363-66. In *K-2 Corp.* the Federal Circuit affirmed a grant of summary judgment of non-infringement where the patent claim required a screw be "permanently fixed," but the accused device used a "removable screw." *Id.* at 1365-66. Conversely here, the permanent, integral bow stop of the Snap Port cannot infringe a claim that requires the bow stop be "separate from and mountable to" the port member. *See id.* at 1363-66.

### 2. Prosecution history and claim vitiation bars E-Z-Dock from alleging infringement of the "separate from and mountable to" limitation under the doctrine of equivalents.

Prosecution history estoppel and claim vitiation bar E-Z-Dock from relying on the doctrine of equivalents to prove infringement. Prosecution history estoppel is a legal limitation on the doctrine of equivalents. *Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 272 F.3d 1365, 1377 (Fed. Cir. 2001). The doctrine of prosecution history estoppel "bars a patentee from asserting as an equivalent subject matter surrendered during prosecution of the patent application. An estoppel may arise as a result of amendments that narrow the scope of a claim to satisfy any requirement of the Patent Act." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1349-50 (Fed. Cir. 2002) (internal citations and quotation marks omitted); *see also Pall Corp. v.*

18

*Hemasure, Inc.*, 181 F.3d 1305, 1311 (Fed. Cir. 1999). A narrowing amendment creates a rebuttable presumption of estoppel, and "the scope of the estoppel depends on the inferences that may reasonably be drawn from the amendment." *Allen Eng'g Corp.*, 299 F.3d at 1349-50 (internal citations and quotation marks omitted).

Aside from prosecution history estoppel, the doctrine of equivalents has other limits. If equivalency is read too broadly, it would effectively read an element out of a claim. This would enlarge the patent beyond the scope of the claims allowed by the Patent Office. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29-30 (1997). The doctrine of equivalents, therefore, is restricted by the claim vitiation doctrine, which bars finding equivalents when the equivalent would effectively vitiate a claim element. Vitiation is best understood not as "an exception to the doctrine of equivalents, but instead [as] a legal determination that the evidence is such that no reasonable jury could determine two elements to be equivalent." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc*., 808 F.3d 1313, 1320 (Fed. Cir. 2015) (internal quotation omitted). Accordingly, courts will not apply the doctrine of equivalents where "the accused device contain[s] the antithesis of the claim structure." *Planet Bingo, LLC v. GameTech Int'l*, Inc., 472 F.3d 1338, 1345 (Fed. Cir. 2006). Summary judgment is proper "where no reasonable fact finder could find equivalence." *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1421-32 (Fed. Cir. 1997).

Here, there can be no dispute that both prosecution history estoppel and claim vitiation bar E-Z-Dock from relying on the doctrine of equivalents to prove infringement. E-Z-Dock twice amended claim 29 to include a bow stop separate from and mountable to the port member. ((Leach Decl., Ex. 9 at SNAP000245, SNAP000291.) In arguing that its amendments overcame the prior art it emphasized that the bow stop was not integral with the port member:

Additionally, *the claim positively states that the bow stop is separate from port member and is mountable to the port member "at the front of the port member"*.

(Leach Decl., Ex. 9 at SNAP000301 (emphasis added).)

E-Z-Dock also explicitly argued that "Claims 8 and 38 [claim 29] have been amended such that the 'water craft port' comprises a 'port member' and a 'bow stop'. This . . . ***makes clear that the port comprises the two pieces – the port member or body and the bow stop***." (*Id.* at SNAP000297 (emphasis added).) *See K-2 Corp.*, 191 F.3d at 1369 ("The scope of the estoppel, i.e., what subject matter has been surrendered during prosecution by the patentee, is to be determined from the vantage point of a reasonable competitor of the patentee.") (quoting *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826-27 (Fed. Cir. 1999)). Thus, E-Z-Dock expressly disclaimed the scope of the claim where the bow stop was <u>not</u> separate from and mountable to the port member. The arguments and amendments to application claim 38 were expressly designed to overcome the rejection based on the Dickman prior art reference. E-Z-Dock is now barred by prosecution history estoppel from arguing that the Snap Port's integral bow stop and port member infringe issued claim 29 under the doctrine of equivalents. *See Allen Eng'g Corp.*, 299 F.3d at 1349-50.

Likewise, the doctrine of claim vitiation further bars E-Z-Dock from relying on the doctrine of equivalents. E-Z Dock cannot argue that an integral bow stop is "separate from and mountable to" the port. The Snap Port's structure is the quintessential "antithesis of the claimed structure" and cannot infringe. *Planet Bingo*, 472 F.3d at 1345. Summary judgment of non-infringement is appropriate for this reason alone.

### D. No Infringement: The Snap Port Bow Stop Does Not Have a Bottom, Let Alone the Claimed Bottom Having a Portion Shaped Complementarily to the Port Cradle.

#### 1. *The Snap Port also does not literally infringe claim 29's bow stop having at least a portion of said bottom surface shaped complementarily to the V-shaped port cradle limitation.*

The Snap Port does not have the claimed bottom surface, let alone a *bottom surface at least a portion of which is shaped complementarily to the top of the port's cradle*. The reason for this complementary shape is so the bottom surface of the separate bow stop can mate with the port member's cradle thereby closing the opening to the cradle to prevent further forward movement of the watercraft. (Leach Decl., Ex. 8, 9:19-31.) As can been seen in every embodiment of E-Z-Dock's '178 patent, the separate bow stop's bottom mates with the top of the cradle to close the opening to the cradle.

E-Z-Dock points to the bottom of the integral port and bow stop to meet this bow-stop-bottom limitation. But the bottom of the port member cannot also be the bottom of the bow stop. No reasonable jury could find that a portion of the Snap Port's alleged bow stop "bottom" is shaped complementarily to the top of the port's V-shaped cradle because the bow stop and port member are formed as one integrated piece. This makes no sense in view of the invention described or the language of claim 29—the bottom of the port shaped complementary to the top of the port does not facilitate the two surfaces fitting together "such that when said bow stop is mounted to said port member, said bow stop closes the opening to said cradle at the front of said port member." *See Choon's Design*, 776 Fed. Appx at 695-96 ("Indeed, the specification discloses *only* loom kits having detachable bases and pin bars. . . . To construe the claims to cover integral pin bars and bases would eliminate these benefits and expand the scope of the claims beyond the specification.") (emphasis in original).

Moreover, the Snap Port bottom surface to which E-Z-Dock identifies as the alleged "bottom" of the bow stop is essentially flat, not V-shaped like the port cradle. Even under E-Z-Dock's contorted infringement allegation, the bottom surface of the alleged bow stop is not shaped complementarily to the port cradle such that the two could mate together, let alone close the opening to the cradle:



(Elder Decl., Ex. E-1, ¶ 4.) Placing the bottom of the alleged "bow stop" on the cradle of the alleged port member shows how objectively ridiculous E-Z-Dock's infringement claim is. There is no portion of the bow-stop bottom that is shaped complementarily to the port cradle *such that* when mounted it closes the opening to the cradle. Moreover, the two port members—the entry and extension members—fit together end-to-end as shown below:



(*Id.*) The bow stop is integral with the port extension member. The integrated bow stop and port

extension member are not the bow stop. The accused product is a fundamentally different design

from the claimed invention. The connection is not one where the bottom of the bow stop is

shaped complementary to the top of the port cradle such that they fit together into each other.

Despite E-Z-Dock's objectively unreasonable allegations, its own infringement contentions

demonstrate the alleged bottom surface of the bow stop is <u>not</u> shaped complementarily to the

port cradle, which is highlighted by the fact that E-Z-Dock ignores this comparison:




 (Leach Decl., Ex. 3 at 18-19; Dkt. 67-1 at 18-19.) E-Z-Dock's allegations have no support in

fact or law, which is demonstrated by the below picture showing the two surfaces are not

complementarily shaped, let alone such that it closes the opening to the cradle:



(Elder Decl., Ex. E-1, ¶ 4.) Nowhere in E-Z-Dock's infringement contentions does E-Z-Dock offer an objectively reasonable contention that the bottom of the alleged bow stop (there is not one) is complementarily shaped to the port's V-shaped cradle *such that* it could fit together. Indeed, it cannot. And no reasonable jury can find that this element is met by the accused Snap Port.

> ### 2. *Prosecution history and claim vitiation bar E-Z-Dock from alleging infringement of the bow stop having a bottom surface shaped complementarily to the V-shaped port cradle limitation under the doctrine of equivalents.*

Both prosecution history estoppel and claim vitiation also bar E-Z-Dock from relying on the doctrine of equivalents to prove infringement of this element too. When E-Z-Dock filed the application that matured into the '178 patent, claim 1 did not include a limitation related to the complementary nature of the bottom of the bow stop and the V-shape of the port member's cradle. (Leach Decl., Ex. 9 at SNAP000046.) E-Z-Dock rewrote claim 1 into application claim 38, which added the complementarily limitation, ". . . said bow stop comprising . . . a bottom surface; at least a portion of bow stop said bottom surface being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle. . . ." (*Id.* at SNAP000239; *see also id.* at SNAP000291.)

In arguing that application claim 38 overcame the rejection, E-Z-Dock argued, "Claim 38 further provides that the bow stop has a bottom surface which is 'shaped complementarily to said port cradle . . . .'" (*Id.* at SNAP000301.) Thus, E-Z-Dock expressly disclaimed the scope of the claim where the bottom surface of the bow stop was <u>not</u> shaped complementarily to the V-shape of the port cradle. The amendments to application claim 38 [issued claim 29] were expressly designed to obtain allowance. E-Z-Dock is now barred by prosecution history estoppel from arguing that the Snap Port's integral bow stop and port member, which lack a bow stop with a

bottom surface shaped complementarily to the V-shape of the port cradle, infringes claim 29 under the doctrine of equivalents. *See Allen Eng'g Corp.*, 299 F.3d at 1349-50.

The doctrine of claim vitiation also bars E-Z-Dock from relying on the doctrine of equivalents because an entire limitation is missing. *Akzo Nobel Coatings*, 811 F.3d at 1342. The Snap Port's integral bow stop has no bottom surface, let alone a bottom surface shaped complementarily to the port cradle *such that* when the bow stop is mounted to said port member, the bow stop closes the opening to the cradle. E-Z-Dock may not rely on the doctrine of equivalents to create an element that is clearly absent from the accused product. *See Planet Bingo*, 472 F.3d at 1345.

## IV.    CONCLUSION

Claim 29 of E-Z Dock's patent requires a modular, docking port with a separate bow stop and with complimentarily shaped mating surfaces. Plaintiff concedes that no claim construction is needed. And the structure of the accused Snap Port is not disputed. Thus, there cannot be infringement, literally or equivalently, because the Snap Port does not have a separate bow stop, let alone one with a bottom surface shaped complimentarily to the V-shaped cradle. Summary judgment should be granted, and E-Z-Dock's complaint dismissed with prejudice.

Date:   June 9, 2022                                    Respectfully submitted,

                                                                /s/ Thomas J. Leach
                                                                    MERCHANT & GOULD P.C.
                                                                    Anthony R. Zeuli (Pro Hac Vice)
                                                                    E-mail: tzeuli@merchantgould.com
                                                                    Thomas J. Leach (Pro Hac Vice)
                                                                    E-mail: tleach@merchantgould.com
                                                                    Joseph W. Dubis (Pro Hac Vice)
                                                                    Email: jdubis@merchantgould.com
                                                                    150 South Fifth Street, Suite 2200
                                                                    Minneapolis, MN 55402
                                                                    Telephone: (612) 332-5300

AND

Daniel J. Lueders
Email: dlueders@uspatent.com
Charles J. Meyer
Email: cjmeyer@uspatent.com
WOODARD, EMHARDT, HENRY,
REEVES & WAGNER, LLP
111 Monument Circle, Suite 3700
Indianapolis, IN 46204-5137
Telephone: (317) 634-3456
Fax: (317) 637-7561

*Attorneys for Defendant Snap Dock, LLC*