**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

E-Z-DOCK, INC.,

       Plaintiff/Counter-Defendant,

v.

SNAP DOCK, LLC,

       Defendant/Counter-Plaintiff

Case No. 1:21-cv-02761-TWP-DML

JURY TRIAL DEMANDED

**EZ DOCK'S OPPOSITION TO SNAP DOCK'S
<u>MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>**

Brian C. Bianco
Julia R. Lissner
Thomas Fullerton
Akerman LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Tel: (312) 634-5700
Fax: (312) 424-1905
brian.bianco@akerman.com
julia.lissner@akerman.com
thomas.fullerton@akerman.com

*Counsel for Plaintiff/Counter-Defendant
E-Z-Dock, Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF MATERIAL FACTS IN DISPUTE.......................................2

   A.   EZ Dock's Identification Of Disputed Determinative Facts ............................ 2

   B.   EZ Dock's Opposition To Snap Dock's Identified Facts.................................. 6

III.   RELEVANT LEGAL STANDARDS ...................................................................7

   A.   Summary Judgment ......................................................................................... 7

   B.   Patent Infringement ......................................................................................... 8

IV.    ARGUMENT.........................................................................................................9

   A.   Snap Dock's Motion Should Be Denied Because Snap Dock's "Non-Infringement
Positions" Are Based On Disputed Material Facts. ................................................... 9

   B.   Snap Dock's Motion Should Be Denied Because EZ Dock's Infringement Contentions
Demonstrate Material Facts Are In Dispute. ......................................................... 12

     1.   The Snap Port Contains A "Bow Stop That Is Separate From And Mountable To Said
Port Member," As Required By Claim 29. ..................................................... 12

     2.   The Snap Port's Bow Stop Has A "Bottom Surface," As Required by Claim 29...... 14

     3.   The Snap Port Has "At Least A Portion Of Said Bottom Surface of Said Bow Stop
Being Shaped Complementary To Said Port Cradle," As Required by Claim 29. ............... 14

     4.   EZ Dock Is Not Barred From Alleging Infringement Under The Doctrine Of
Equivalents.................................................................................................... 15

   C.   Snap Dock's Motion Should Be Denied Because, Under Snap Dock's Own Positions,
The Snap Port Still Infringes Claim 29 .................................................................. 19

     1.   Based On Snap Dock's Position, The Snap Port Has A "Bow Stop Which Is Separate
From And Mountable To Said Port Member." ................................................. 19

     2.   Based On Snap Dock's Position, The Snap Port Has "At Least A Portion Of Said
Bottom Surface Of Said Bow Stop Being Shaped Complementarily To Said Port Cradle." 23

   D.   Snap Dock's Motion Should Be Denied Because Snap Dock Relies Upon Non-Existent
Claim Limitations To Drastically Narrow The Scope of Claim 29. ......................... 24

   E.   In Addition, Snap Dock's Motion Should Be Denied Because It Violates the Court's
Scheduling Order. ................................................................................................. 27

V.     CONCLUSION.....................................................................................................29

# TABLE OF AUTHORITIES

**Federal Cases**

*A.B. Dick Co. v. Burroughs Corp*.,
713 F.2d 700 (Fed. Cir. 1983) ........................................................................... 22

*Amstar Corp. v. Envirotech Corp*.,
730 F.2d 1476 (Fed. Cir. 1984) ......................................................................... 22

*Anderson v. Liberty Lobby, Inc.*,
447 U.S. 242 (1986) ............................................................................................ 7

*Cadence Pharmas Inc. v. Exela PhamSci, Inc.*,
780 F.3d 1364 (Fed. Cir. 2015) ......................................................................... 18

*CCS Fitness, Inc. v. Brunswick Corp.,*
288 F.3d 1359 (Fed. Cir. 2002) ........................................................................... 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................ 7

*Design Basics, LLC v. T.K. Constructors Inc.,*
No. 1:16-cv-01841, 2016 WL 9274931 (S.D. Ind. Oct. 19, 2016) ..................... 28

*Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.,*
429 F.3d 1043 (Fed. Cir. 2005) ........................................................................... 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722, (2002) .......................................................................................... 16

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,*
423 F.3d 1343 (Fed. Cir. 2005). ........................................................................ 22

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc*.,
362 F.3d 1367 (Fed. Cir. 2004) ........................................................................... 7

*Intendis GmbH v. Glenmark Pharmas Inc., USA*,
822 F.3d 1355 (Fed. Cir. 2016) ......................................................................... 16

*Kratzer v. Scott Hotel Group, LLC*,
No. 4:17-cv-00212, 2019 WL 2119729 (S.D. Ind. Mar. 27, 2019) ..................... 29

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) ............................................................................................ 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................................ 7

*Netword, LLC v. Centraal Corp.*,
    242 F.3d 1347 (Fed. Cir. 2001) ................................................................. 7

*Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*,
    No. 1:14–cv–1734, 2015 WL 4523514 (S.D. Ind. July 27, 2015) ........................................... 28

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
    472 F.3d 1338 (Fed. Cir. 2006) ................................................................. 18

*Primos, Inc. v. Hunter's Specialties, Inc.*,
    451 F.3d 841 (Fed. Cir. 2006) ................................................................. 16

*SRI Int'l v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) ................................................................. 8

*Stiftung v. Renishaw PLC*,
    945 F.2d 1173 (Fed. Cir. 1991) ................................................................. 22

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................. 8

*Waterloo Furniture Components, Ltd. v. Haworth, Inc.*,
    467 F.3d 641 (7th Cir. 2006) ................................................................. 29

**Rules**

S.D. Ind. L. R. 56-1 ................................................................. 2, 28

Plaintiff/Counter-Defendant E-Z Dock, Inc. ("EZ Dock") hereby submits it Opposition to Defendant/Counter-Plaintiff Snap Dock, LLC's ("Snap Dock") Motion for Summary Judgement of Non-Infringement (ECF No. 75, the "Motion").

## I.    INTRODUCTION

Snap Dock's Motion must be denied because there are significant material facts in dispute as to the issue of Snap Dock's infringement of EZ Dock's U.S. Patent No. 7,918,178 (the "'178 Patent"). EZ Dock has repeatedly demonstrated that Snap Dock's Snap Port (the "Accused Product") contains each element set forth in claim 29 of the '178 Patent, and therefore infringes. EZ Dock has shown infringement through detailed, annotated pictures of the Accused Product in EZ Dock's preliminary infringement contentions (ECF No. 67). Based on the plain meaning of the claim language, EZ Dock's infringement contentions demonstrate that no element of claim 29 is "missing" from the Accused Product. EZ Dock's infringement contentions are confirmed and supported by two witness declarations, one from an employee and the other from an expert.

Snap Dock's Motion does not refute EZ Dock's infringement contentions. Rather, to argue that certain claim elements are "missing," Snap Dock fabricates and introduces an entirely different, parallel set of facts. The result is two competing sets of facts: 1) EZ Dock's actual infringement positions, and 2) Snap Dock's alternative positions, which are in dispute. Snap Dock's Motion should also be denied because Snap Dock's non-infringement positions rely upon non-existent claim limitations (as opposed to the plain meaning of the claim terms) to drastically narrow the scope of claim 29. In contrast, EZ Dock's infringement contentions are based on the claim language and do not require any claim term to be construed.

Putting aside the lack of merit to Snap Dock's Motion, the Motion should be denied for the additional reason that it directly violates the *Patent Case Management Plan* in this case (ECF

No. 46), which sets forth a very specific schedule and procedure for seeking summary judgment. Accordingly, for all these reasons, Snap Dock's Motion should be denied.

## II.   STATEMENT OF MATERIAL FACTS IN DISPUTE

### A.   EZ Dock's Identification Of Disputed Determinative Facts

Pursuant to Local Rule 56-1, EZ Dock identifies the following "determinative facts and factual disputes that [EZ Dock] contends demonstrate a dispute of fact precluding summary judgment." S.D. IND. L. R. 56-1(b), (e):

1. The Accused Product is a floating watercraft port. *See* ECF No. 67 (*EZ Dock's Disclosure of Preliminarily Asserted Claims and Preliminary Infringement Contentions*) at 67-1; <u>Exhibit 1</u> hereto (Declaration of Robert Blakley) at ¶ 9; <u>Exhibit 2</u> hereto (Expert Declaration of Richard Hepburn) at ¶ 1.[1]

2. The Accused Product has a port member, as shown below. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶ 13, 14, 15, 16, 17, 18, 19; <u>Exhibit 2</u> at ¶¶ 9, 10, 14.



port member

3. The Accused Product has a bow stop, as shown below. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶ 20, 21, 22, 23, 24, 25; <u>Exhibit 2</u> at ¶¶ 9, 11, 14.

---

[1] Under the *Patent Case Management Plan* in this case, EZ Dock's expert reports on liability issues are not due until August 29, 2022, and EZ Dock specifically reserves all rights to provide its reports by the deadline identified therein. *See* ECF No. 46 at § IV.C.



bow stop

4.　　The port member of the Accused Product is separate from the bow stop. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 10, 11, 12, 13, 20, 21; <u>Exhibit 2</u> at ¶¶ 9, 11, 14.

5.　　The Accused Product has a port member having an upper surface, a bottom surface, side surfaces, a front surface, and a back surface. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 14, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

6.　　The Accused Product has a cradle being formed in at least a part of said upper surface; said cradle extending rearwardly from the front surface. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 15, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

7.　　The front surface of the Accused Product defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 16, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

8.　　The back surface of the port member of the Accused Product defines an entrance to said cradle. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 16, 17, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

9.　　The cradle of the Accused Product is defined by a pair of opposed inwardly sloping walls. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 16, 17, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

10.     The Accused Product has a plurality of roller sockets positioned along said cradle walls and rollers received in said roller sockets. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 18, 19; <u>Exhibit 2</u> at ¶¶ 10, 14.

11.     The bow stop of the Accused Product is separate from and mountable to said port member at the front of said port member. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 10, 11, 12, 13, 20, 21; <u>Exhibit 2</u> at ¶¶ 9, 11, 14.

12.     The bow stop of the Accused Product has a top surface, a bottom surface, side surfaces, a front surface and a back surface. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 22, 25; <u>Exhibit 2</u> at ¶¶ 11, 14.

13.     The Accused Product has at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle at the front of said port member. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 22, 23, 24, 25; <u>Exhibit 2</u> at ¶¶ 11, 12, 13, 14.

14.     At least a portion of the bottom surface of the bow stop of the Accused Product is shaped complementarily to the port cradle. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 22, 23, 24, 25; <u>Exhibit 2</u> at ¶¶ 11, 12, 13, 14.

15.     At least a portion of the bottom surface of the bow stop of the Accused Product is not planar or flat. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 22, 23, 24, 25; <u>Exhibit 2</u> at ¶¶ 11, 14.

16.     At least a portion of the bottom surface of the bow stop of the Accused Product is angled to slope inwardly. *See* ECF No. 67-1; <u>Exhibit 1</u> at ¶¶ 22, 23, 24, 25; <u>Exhibit 2</u> at ¶¶ 11, 14.

4

17.     When the bow stop of the Accused Product is mounted to the port member of the Accused Product, the bow stop closes the opening to the cradle at the front of the port member. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 23, 24, 25; Exhibit 2 at ¶¶ 11, 12, 13, 14.

18.     The Accused Product does not include an entry port member and an extension port member. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 13, 20, 27, 28, 29, 30, 31, 33, 34, 36; Exhibit 2 at ¶¶ 10, 11, 12, 14.

19.     The Accused Product does not include a bow stop that is integral with the extension port member. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 10, 11, 12, 27, 28, 29, 30, 31, 33, 34, 35, 36; Exhibit 2 at ¶¶ 10, 11, 12, 14.

20.     The Accused Product does not include a bow stop and port member that are one piece. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 10, 11, 12, 27, 28, 29, 30, 31, 33, 34, 35, 36; Exhibit 2 at ¶¶ 10, 11, 12, 14.

21.     The Accused Product includes a bow stop that has a bottom surface. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 20, 22, 23, 24, 25; Exhibit 2 at ¶¶ 11, 12, 13, 14.

22.     The Accused Product has at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle. *See* ECF No. 67-1; Exhibit 1 at ¶¶ 20, 22, 23, 24, 25; Exhibit 2 at ¶¶ 11, 12, 13, 14.

### B.      EZ Dock's Opposition To Snap Dock's Identified Facts

Snap Dock's Motion is based on 12 allegedly determinative and undisputed facts. *See* ECF No. 76 at § II. However, EZ Dock disputes Snap Dock's Fact Nos. 8-12 for at least the following reasons:

8.      Snap Dock has added annotations to the photograph of the Accused Product stating the elements of the Accused Product include an entry port member, extension port member, and bow stop. *See id.* at § II at ¶ 8; Exhibit 1 at ¶¶ 10, 13, 19, 20, 25, 27, 28, 33; Exhibit 2 at ¶ 9, 10, 11, 12, 13; ECF No. 67-1.

9.      The Accused Product does not include an entry port member and an extension port member that are joined end-to-end to form the port. *See* ECF No. 76 at § II at ¶ 9; Exhibit 1 at ¶¶ 10, 13, 19, 20, 25, 27, 28, 34; Exhibit 2 at ¶¶ 10, 11, 12, 14; ECF No. 67-1.

10.      The Accused Product's bow stop is not integral with the extension port member. *See* ECF No. 76 at § II at ¶ 10; Exhibit 1 at ¶¶ 10, 13, 19, 20, 25, 27, 28, 29, 30, 31, 35; Exhibit 2 at ¶¶ 10, 11, 12, 14; ECF No. 67-1. The bow stop is separate from and mountable to the port. *See id.*

11.      The Accused Product's bow stop and port member are two pieces, not one. *See* ECF No. 76 at § II at ¶ 11; Exhibit 1 at ¶¶ 10, 13, 19, 20, 25, 27, 28, 36; Exhibit 2 at ¶¶ 10, 11, 12, 13, 14; ECF No. 67-1.

12.      The Accused Product's bow stop has a bottom surface, at least a portion of the bottom surface of the bow stop being shaped complementarily to said port cradle. *See* ECF No. 76 at § II at ¶ 12; Exhibit 1 at ¶¶ 22, 23, 24, 25, 31, 37; Exhibit 2 at ¶¶ 10, 11, 12, 13, 14; ECF No. 67-1. Claim 29 does not include a limitation that

6

the bow stop bottom surface be shaped complementarily to the top surface of the port member. *See id.*

## III.  RELEVANT LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment cannot be granted if a genuine issue of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Snap Dock bears the burden of proving that no material issues of fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering Snap Dock's Motion, the Court must "view the evidence presented through the prism of the substantive evidentiary burden" and in the light most favorable to EZ Dock. *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 254, 255 (1986). Thus, "all justifiable inferences are to be drawn in [EZ Dock's] favor." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id.*

In the patent infringement context, summary judgment of non-infringement is only appropriate when, "*on the correct claim construction*, no reasonable jury could have found infringement on the undisputed facts or when all reasonable factual inferences are drawn in favor of the patentee." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001) (emphasis added). "It is not [the court's] task . . . to attempt to interpret confusing or general testimony to determine whether a claim [of infringement] has been made out, particularly at the summary judgment stage." *Globetrotter Software, Inc. v. Elan Computer Grp.*, *Inc.*, 362 F.3d 1367, 1378 (Fed. Cir. 2004) (vacating summary judgment of non-infringement because patentee

presented sufficient evidence through its expert that raised a fact issue on whether accused product infringed claim).

### B.    Patent Infringement

A patent infringement analysis involves two steps: 1) "the proper construction of the asserted claim," and 2) "a determination as to whether the accused method or product infringes the asserted claim as properly construed." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir. 1996). The first step, claim construction, is a matter of law exclusively within the province of the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). As to the second step, the comparison of the claims to the accused products is a question of fact. *See Dorel Juvenile Group, Inc. v. Graco Children's Prods., Inc.,* 429 F.3d 1043, 1047 (Fed. Cir. 2005) ("The district court has invaded the province of the finder of fact . . . in deciding the infringement question.").

The second step of the infringement "analysis requires a comparison of the properly construed claims to the accused device, to see whether that device contains all the limitations, either literally or by equivalents, in the claimed invention." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1365 (Fed. Cir. 2002). Infringement *cannot* be "determined by comparing an accused product . . . with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee." *Id.* at 1370 (quoting *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 (Fed. Cir. 1985)).[2]

In this case, the Court can skip the first step of the infringement analysis because no claim terms need to be construed. EZ Dock's infringement contentions are based on the claim language, and Snap Dock's Motion *agrees* that "no claim construction is necessary." ECF No. 76

---

[2] As a result, the Court must ignore any effort by Snap Dock to urge the Court to consider the preferred embodiment of the '178 Patent and EZ Dock products. *See* ECF No. 76 at 17 and 19.

at 11. Snap Dock also did not identify any claim terms for construction, propose any constructions, provide any support for proposed constructions, or ask this Court to rule on any claim construction issues in its Motion. *See id.* Accordingly, Snap Dock's Motion turns on the second step of the patent infringement analysis.

## IV.    ARGUMENT

### A.    Snap Dock's Motion Should Be Denied Because Snap Dock's "Non-Infringement Positions" Are Based On Disputed Material Facts.

Snap Dock's Motion must be denied because there are significant material facts in dispute as to the issue of Snap Dock's infringement of the '178 Patent. EZ Dock's infringement contentions demonstrate, in detail, that the Accused Product contains each element set forth in claim 29 of the '178 Patent, and therefore infringes. *See* ECF No. 67; *see also* Exhibits 1-2. Based on the plain meaning of the claim language, EZ Dock's infringement contentions (supported by EZ Dock's two declarations) demonstrate that no element of claim 29 is "missing" from the Accused Product. *See id.*

Snap Dock's Motion is not based on the same factual position. To argue that certain claim elements are "missing," Snap Dock fabricates an entirely different, parallel set of facts, which is based on a self-serving declaration from its President Blake Elder. *See* ECF No. 76 at 11; ECF No. 77. Rather than address EZ Dock's positions, Mr. Elder asserts alternative "facts" that conflict with EZ Dock's infringement contentions. *Compare* ECF No. 77, *with* ECF No. 67 and Exhibits 1-2. For example, paragraphs 15, 16, 17, 18, and 19 of Mr. Elder's Declaration directly dispute the facts in EZ Dock's infringement contentions by asserting certain claim elements are "missing" from the Accused Product. *See* ECF No. 77. Mr. Elder disputes that the Accused Product includes a separate "bow stop" and "port member," rather asserting that the Accused Product has two different port members (it does not) and the bow stop is "integral" to

9

the second port member (it is not). *See id.* This is a completely different position than EZ Dock's infringement contentions. *Compare* ECF No. 77, *with* ECF No. 67 and Exhibits 1-2.

The result is two competing sets of facts: 1) EZ Dock's actual infringement positions, and 2) Snap Dock's alternative positions, which are in dispute. EZ Dock has identified the components of the Accused Product as the "port member" and "bow stop," while Snap Dock's Motion identifies (improperly) the same components of the Accused Product as an "entry port member," "extension port member," and "bow stop." *Compare* ECF No. 67 and Exhibits 1-2, *with* ECF Nos. 76 and 77.

EZ Dock's Infringement Position                    Snap Dock's Alternative Position



Snap Dock's entire non-infringement position is based upon its alternative set of facts. For example, Snap Dock argues that the Accused Product is missing claim 29's "bow stop which is separate from and mountable to said port member" limitation because the Accused Product's "bow stop and port member are one piece." ECF No. 76 at 21. However, Snap Dock's position is based on its own alternative set of facts that recast the "bow stop" as part of the "extension port

member." *See id.* EZ Dock's infringement contentions (supported by EZ Dock's two declarations) clearly show, that when viewed properly, the Accused Product has a "bow stop which is separate from and mountable to said port member." *See* § II, *supra.* EZ Dock strongly disputes Snap Dock's alternative facts to simply relabel the pieces of the Accused Product to avoid infringement. *See id.* At best for Snap Dock, the issue of whether the Accused Product includes a "bow stop which is separate from and mountable to said port member" is a fact in dispute.

Snap Dock also argues that the Accused Product "does not have a bottom, let alone the claimed bottom having a portion shaped complementary to the port cradle." ECF No. 76 at 26. However, this position is also based upon the alternative set of facts requiring Snap Dock to identify (improperly) the components of the Accused Product as an "entry port member," "extension port member," and "bow stop," in contradiction to EZ Dock's position. For example, Snap Dock argues this claim limitation is missing because the "bow stop and port member are formed as one integrated piece." *Id*. However, the position that the bow stop and port member are formed as one integrated piece is based on its own alternative set of facts that recast the "bow stop" as part of the "extension port member." As discussed above, EZ Dock's infringement contentions (supported by EZ Dock's two declarations) clearly show, that when viewed properly, the Accused Product has a "bow stop which is separate from and mountable to said port member." *See* § II, *supra*. As shown in EZ Dock's infringement contentions, the bow stop has a bottom portion shaped complementary to the port cradle. *See id.* At best for Snap Dock, the issue of whether the Accused Product includes the limitation "at least a portion of said bottom surface of said bow stop being shaped complementary to said port cradle" is an issue of fact that precludes summary judgment.

**B.      Snap Dock's Motion Should Be Denied Because EZ Dock's Infringement Contentions Demonstrate Material Facts Are In Dispute.**

EZ Dock's infringement contentions (supported by EZ Dock's two declarations) demonstrate that under the plain and ordinary meaning of the claim terms, each limitation of claim 29 of the '178 Patent is found in the Accused Product. *See* ECF No. 67; Exhibits 1-2. Contrary to Snap Dock's assertions, the infringement contentions show that the Accused Product is not "missing" any elements of claim 29, and in particular includes a "bow stop which is separate from and mountable to said port member" and the "bottom having a portion shaped complementary to the port cradle." *Id.*

**1.      The Snap Port Contains A "Bow Stop That Is Separate From And Mountable To Said Port Member," As Required By Claim 29.**

EZ Dock's infringement contentions (supported by EZ Dock's two declarations) clearly establish that the Accused Product is a floating watercraft port that has two pieces. *See* ECF No. 67; Exhibits 1-2. Under the plain and ordinary meaning of the terms "port member" and "bow stop," the Accused Product has a port member and a bow stop as shown below.





bow stop

The bow stop is a separate piece from the port member. *See id.* As shown in the infringement contentions, using the plain and ordinary meaning of the claim language, the bow stop of the Accused Product is separate from and mountable to the port member. *See id.* The bow stop is mountable to the port member using couplers as shown below and in the infringement contentions. *See id.*



### 2. The Snap Port's Bow Stop Has A "Bottom Surface," As Required by Claim 29.

EZ Dock's infringement contentions (supported by EZ Dock's two declarations) demonstrate that the Accused Product bow stop has a "bottom surface," as required by claim 29, pictures of which are shown on pages 16 and 18 of the infringement contentions. *See* ECF No. 67; Exhibits 1-2. As shown by the picture below, the bottom of the bow stop is not planar or flat. *See id.* Rather, the bottom surface of the bow stop is angled to slope inwardly. *See id.*



at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle

The bottom surface of the Accused Product is not planar or flat. Rather, the bottom surface of the bow stop of the Accused Product is angled to slope inwardly.

### 3. The Snap Port Has "At Least A Portion Of Said Bottom Surface of Said Bow Stop Being Shaped Complementary To Said Port Cradle," As Required by Claim 29.

As shown in EZ Dock's infringement contentions and in the above picture (and as supported by EZ Dock's two declarations), at least a portion of said bottom surface of said bow

14

stop is not planar or flat. *See* ECF No. 67; Exhibits 1-2. The bottom surface of the bow stop of the Accused Product is angled to slope inwardly as shown in the picture above. *See id.* The picture shows at least a portion of the bottom surface has a pair of opposed inwardly sloping walls. *See id.* Claim 29 states that the cradle is defined by a pair of opposed inwardly sloping walls. *See* ECF No. 78-8. Accordingly, the Accused Product satisfies this claim element because, under the plain and ordinary meaning, at least a portion of said bottom surface of said bow stop has a pair of opposed inwardly sloping walls being shaped complementary to the inwardly sloping walls of said port cradle.

### 4. EZ Dock Is Not Barred From Alleging Infringement Under The Doctrine Of Equivalents.

Contrary to Snap Dock's assertions, prosecution history estoppel and claim vitiation do not bar EZ Dock from relying on the doctrine of equivalents to prove infringement.[3] *See* ECF No. 76 at § III.D.2. At the outset, Snap Dock's arguments fail because they rely upon Snap Dock's alternative positions, which are in dispute. For example, Snap Dock's arguments about the availability of the doctrine of equivalents rely upon Snap Dock's (incorrect) interpretation of an "integral bow stop" (ECF No. 76 at 25), a "V-shaped" cradle (*id.* at 29), and the "integral bow stop has no bottom surface" (*id.* at 30). Each of these positions is a disputed issue of fact that precludes summary judgment. Moreover, Snap Dock does not discuss the application of doctrine of equivalents on the merits.[4] Rather, Snap Dock's Motion contends that prosecution history

---

[3] To be clear, EZ Dock's infringement contentions demonstrate that the Accused Product literally infringes claim 29 of the '178 Patent. *See* ECF No. 67. However, if the Accused Product does not literally satisfy a claim element, then the claim element is satisfied under the doctrine of equivalents. *See id.*

[4] Snap Dock does not argue, or even suggest, that the second piece of the Accused Product does not perform substantially the same function as the claimed bow stop in substantially the same manner to achieve substantially the same result. That is, Snap Dock does not contend that its bow stop is not equivalent to the claimed bow stop.

estoppel and the claim vitiation doctrine bar EZ Dock from *even alleging* infringement under the doctrine of equivalents. Snap Dock's position is simply wrong.

The amendments and arguments directed to the "separate from and mountable to" language do not bar EZ Dock from alleging infringement under the doctrine of equivalents. According to Snap Dock, "the arguments and amendments to application claim 38 [claim 29] were expressly designed to overcome the rejection based on the Dickman prior art reference." *Id.* at 25. EZ Dock distinguished the two-piece structure recited in claim 29 from the single structure of Dickman. But prosecution history estoppel does not attach to this claim limitation because claim 29 *always* included a two-piece structure, *i.e.* a separate bow stop. Original claim 1 recited the feature of "a separate bulkhead [bow stop] which is mountable to said port member," and when first presented claim 38 (which issued as claim 29) recited "a separate bow stop which is mountable to said port." ECF No. 78-9 at SNAP0000046, 239.

The slight difference in language between original claim 1 and claim 38 [claim 29] when first presented during prosecution is, at most, a tangential amendment; if a separate bow is mounted to a port member, the bow stop is also separate from the port member. Tangential amendments do not prevent the application of the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740-41 (2002). As the Federal Circuit has noted, estoppel based on an amendment does not occur when the amendment is clarifying the scope of the claim. *Intendis GmbH v. Glenmark Pharmas Inc., USA*, 822 F.3d 1355, 1365 (Fed. Cir. 2016); *see also Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 849 (Fed. Cir. 2006) (affirming infringement under doctrine of equivalents even though the patent owner amended a claim term during prosecution because the amendment did not effect the read on the alleged equivalent). By amending claim 29 to more specifically indicate that the bow

16

stop and port member are two separate pieces, EZ Dock did not narrow the scope of the claim. Therefore, the amendments and arguments directed to the "separate from and mountable to" language do not bar EZ Dock from asserting infringement under the doctrine of equivalents.

In addition, the amendments and arguments directed to the bow stop bottom surface do not bar EZ Dock from alleging infringement under the doctrine of equivalents. Snap Dock asserts that, because "EZ Dock argued [] 'Claim 38 [claim 29] further provides the bow stop has a bottom surface which is 'shaped complementarily to said port cradle[,]' … EZ Dock expressly disclaimed the scope of the claim where the bottom surface of the bow stop was <u>not</u> shaped complementarily to the V-shape of the port cradle." ECF No. 76 at 29-30 (quoting ECF No. 78-9 at SNAP0000301) (emphasis original). Snap Dock's contention fails based upon the claim language.

Claim 29 states "***at least a portion*** of said bottom surface of said bow stop being shaped complementarily to said port cradle." *See* ECF No. 78-8 (emphasis added). Snap Dock ignores the "at least a portion of said bottom surface" in an effort to rewrite the claim language to require the entire bottom surface to be shaped complementarily to the port cradle. This is demonstrably wrong. In addition, Snap Dock attempts to add the limitation that the cradle be "V-shaped." ECF No. 76 at 29. However, nowhere in claim 29 is the cradle required to be V-shaped. *See* ECF No. 78-8. Indeed, Snap Dock's entire reasoning as to the application of prosecution history estoppel is based upon claim limitations that do not exist, *i.e.* integral bow stop and port member, entire bow stop bottom surface, and V-shaped cradle. *See* ECF No. 76 at 29-30. Snap Dock's position that EZ Dock "expressly disclaimed" claim scope of limitations that do not exist is not credible and should be rejected. *Id.* at 29.

Snap Dock's additional arguments based on claim vitiation are also deficient. Snap Dock argues that, because the non-existent claim limitations of integral bow stop and port member, entire bow stop bottom surface, and V-shaped cradle, are "missing," the doctrine of claim vitiation applies. *Id.* at 25, 30. However, as discussed, these claim limitations do not exist and the notion of non-existent claim limitations invoking the doctrine of claim vitiation is not credible. In support of its position, Snap Dock primarily cites to the Federal Circuit's holding in *Planet Bingo, LLC v. GameTech International, Inc. See* ECF No. 76 at 24, 25, 30 (citing 472 F.3d 1338, 1345 (Fed. Cir. 2006)). But as the Federal Circuit has explained, "*Planet Bingo*'s holding was based on a finding that a combination determined before a game was substantially different, factually, from a combination determined after the game started." *Cadence Pharmas Inc. v. Exela PhamSci, Inc.*, 780 F.3d 1364, 1371 (Fed. Cir. 2015). In contrast, as demonstrated above, the Accused Product has two pieces, not one, and one of the two pieces (*e.g.*, the bow stop) is mountable to the other (*e.g.*, the port member) and has a bottom surface at least a portion of which is shaped complimentarily to the cradle.

The Federal Circuit in *Cadence* further cautioned against the same self-serving relabeling of terms now employed by Snap Dock:

> Characterizing an element of an accused product as the "antithesis" of a claimed element is also a conclusion that should not be used to overlook the factual analysis required to establish whether the differences between a claimed limitation and an accused structure or step are substantial *vel non.* The determination of equivalence depends not on labels like "vitiation" and "antithesis" but on the proper assessment of the language of the claimed limitation and the substantiality of whatever relevant differences may exist in the accused structure.

780 F.3d at 1372. But Snap Dock's entire non-infringement position is based on using its own terms and self-serving labels. The absence of any factual analysis on its vitiation arguments, each of which receives a scant paragraph of discussion, further demonstrates the futility of Snap

Dock's Motion. Simply put, prosecution history estoppel and claim vitiation do not bar EZ Dock from relying on the doctrine of equivalents to prove infringement. At best for Snap Dock, its reliance upon non-existent claim limitations and conclusory labels demonstrate significant material facts in dispute that preclude summary judgment.

### C.    Snap Dock's Motion Should Be Denied Because, Under Snap Dock's Own Positions, The Snap Port Still Infringes Claim 29.

Snap Dock's Motion argues that its Accused Product is missing two claim elements, and thus does not infringe. *See, e.g.,* ECF No. 76 at 11. Specifically, Snap Dock contends the Accused Product is missing: 1) a "bow stop which is separate from and mountable to said port member," and 2) "at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle." *Id.* at 21, 26. As discussed below, however, even under Snap Dock's own alternative positions, the Accused Product has these claim limitations, no element of claim 29 is "missing" from the Accused Product, and the Accused Product infringes.

### 1.    Based On Snap Dock's Position, The Snap Port Has A "Bow Stop Which Is Separate From And Mountable To Said Port Member."

Applying Snap Dock's own non-infringement position, the Accused Product has the supposed "missing" claim limitation, namely a "bow stop which is separate from and mountable to said port member." ECF No. 76 at 21. Claim 29 requires two separate pieces – a port member and a bow stop. *See* ECF No. 78-8. The claim language requires a "bow stop which is separate from and mountable to said port member." *Id.* As discussed, EZ Dock's infringement position is based on the Accused Product having two separate pieces – a port member and a bow stop – where the "bow stop is separate from and mountable to said port member." *See* ECF No. 67.



Snap Dock's non-infringement position is based upon the first piece of the Accused Product being relabeled as an "entry port member" and the second piece of the Accused Product as having an "extension port member" and a "bow stop."



ECF No. 76 at § 2 at ¶ 8. The "entry port member" under Snap Dock's position is the same structure as the "port member" in EZ Dock's position. As shown above, the "entry port member" satisfies each limitation of the "port member" of claim 29.

According to Snap Dock, because the "bow stop" and "extension port member" are part of the same piece, the "bow stop" is "integral" with the "extension port member." *Id.* at § 2 at ¶ 10. According to Snap Dock's logic, because the "bow stop" is "integral" with the "extension port member," the "bow stop" is not "separate from and mountable to said port member." *Id.* Snap Dock's position is not credible. Even under Snap Dock's own position, the Accused

Product has a "bow stop which is separate from and mountable to said [entry] port member." The claim requires a "bow stop which is separate from and mountable to *said* port member." ECF No. 78-8 (emphasis added). The claimed "port member" is the "port member" in EZ Dock's position, and the "entry port member" in Snap Dock's position. The bow stop of the Accused Product, as labeled by Snap Dock, is "separate from and mountable to" the "entry port member."

Further, Snap Dock's position relies upon the "extension port member" being the claimed "port member." *See* ECF No. 76 at § 2. However, the "extension port member," as labeled by Snap Dock, *cannot* be the claimed "port member." The claimed "port member" requires a particular cradle structure, *i.e.* "said cradle extending rearwardly from said front surface; wherein said front surface defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle." ECF No. 78-8. Snap Dock's President, Mr. Elder, admits in his declaration that the "extension port member" does not have this cradle structure. ECF No. 77 at ¶¶ 16, 17. In addition, the claimed "port member" requires the "back surface of said port member defines an entrance to said cradle." ECF No. 78-8. As shown in the below picture, the back surface of the "extension port member" is vertical and does not define an entrance to said cradle.



21

Accordingly, under Snap Dock's own position, the Accused Product has a "bow stop" which is "separate from and mountable to said [entry] port member." Even under Snap Dock's position, the notion that the bow stop is "integral" to the extension port member does not negate infringement.

Snap Dock's position is also contrary to well-established law. Snap Dock cannot avoid infringement by relabeling the bow stop of the Accused Product as two-sections, *i.e.* a "bow stop" and "extension port member," and then claim the existence of the "extension port member" establishes non-infringement:

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write. Neither would infringement be negated simply because the patentee failed to contemplate the use of the pencil in that environment.

*Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1178 (Fed. Cir. 1991) (quoting *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983)). "Basic patent law holds that a party may not avoid infringement of a patent claim using an open transitional phrase, such as comprising, by adding additional elements." *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.,* 423 F.3d 1343, 1353 (Fed. Cir. 2005); *see also Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984) ("Modification by mere *addition* of elements of functions, whenever made, cannot negate infringement without disregard of the long-established, hornbook law"). Here, Snap Dock cannot avoid infringement by adding in an additional element it calls an "extension port member."

2.      **Based On Snap Dock's Position, The Snap Port Has "At Least A Portion Of Said Bottom Surface Of Said Bow Stop Being Shaped Complementarily To Said Port Cradle."**

Snap Dock's Motion argues that its Accused Product is missing "at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle" because "the bow stop and [extension] port member are formed as one integrated piece." ECF No. 76 at 26.[5] Snap Dock's non-infringement position is not correct. Even if the bow stop and extension port member are formed as one integrated piece, this claim limitation is satisfied.

Below are pictures of the bottom surface of the structure Snap Dock calls the "bow stop" and "extension port member."



bottom surface

bottom surface of the bow stop according to Snap Dock's position

Even assuming the bottom surface of the bow stop is only the front portion of the bottom surface, these pictures demonstrate that "at least a portion of said bottom surface of said bow stop" is not flat or planar and angled to slope inwardly as shown in the picture above. These pictures show at

---

[5] Snap Dock's Motion also improperly argues this claim limitation is not satisfied because of non-existent claim limitations, which EZ Dock addresses in the next section of this brief.

least a portion of the bottom surface has a pair of opposed inwardly sloping walls. Claim 29 states that the cradle is defined by a pair of opposed inwardly sloping walls. *See* ECF No. 78-8. Accordingly, the Accused Product satisfies this claim element because, under Snap Dock's position, at least a portion of said bottom surface of said bow stop has a pair of opposed inwardly sloping walls being shaped complementary to the inwardly sloping walls of said port cradle.

### D. Snap Dock's Motion Should Be Denied Because Snap Dock Relies Upon Non-Existent Claim Limitations To Drastically Narrow The Scope of Claim 29.

Snap Dock's Motion admits and agrees that no claim construction is necessary to compare the claim language to the Accused Product as part of the infringement analysis. *See* ECF No. 76 at 11. However, at the same time, the Motion repeatedly discusses and relies upon non-existent claim limitations to support its improper non-infringement positions. Claim 29 of the '178 Patent provides a specific structure for a floating watercraft port. *See* ECF No. 78-8.

> 29. A floating watercraft port comprising:
>
> a port member having an upper surface, a bottom surface, side surfaces, a front surface and a back surface; a cradle being formed in at least a part of said upper surface; said cradle extending rearwardly from said front surface; wherein said front surface defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle and said back surface of said port member defines an entrance to said cradle; said cradle being defined by a pair of opposed inwardly sloping walls; a plurality of roller sockets positioned along said cradle walls and rollers received in said roller sockets; and
>
> a bow stop which is separate from and mountable to said port member at the front of said port member; said bow stop comprising a top surface, a front surface, side surfaces, a back surface and a bottom surface; at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle at the front of said port member.

*Id.*

Claim 29 requires a "port member" having a specific structure, and a "bow stop" having a specific structure. *Id.* The port member has various surfaces as detailed in the claim and a cradle

being formed in at least a part of the upper surface. *Id.* The claim details the cradle structure and states the cradle is defined by a pair of opposed inwardly sloping walls. *Id.* Claim 29 requires "a bow stop which is separate from and mountable to said port member." *Id.* The bow stop has various surfaces as detailed in the claim including a bottom surface, at least a portion of the bottom surface of the bow stop being shaped complementary to the port cradle. *Id.*

Despite the straightforward language and plain and ordinary meaning of claim 29 and Snap Dock's agreement that no claim terms require construction, Snap Dock's Motion is based on extensive non-existent claim limitations. For example, there are no limitations that require the "cradle" to be "V-shaped." *See id.* Yet, Snap Dock repeatedly relies upon the "V-shaped cradle" in its motion. *See* ECF No. 76 at 13, 17, 26, 27, 29, 30. There are also no limitations that require the "port" (which is in the preamble and not limiting on the claim) to include "an entry member" and an "extension member." *See* ECF No. 78-8. Yet, Snap Dock's entire non-infringement position is based on the "port" including an "entry member" and "extension member." *See* ECF No. 76 at 14.

Snap Dock's Motion repeatedly relies upon claim limitations of the "bow stop" that do not exist. For example, claim 29 does not require any of the following limitations on the bow stop, each of which are relied upon by Snap Dock in its Motion:

- placed on top of the port member (ECF No. 76 at 13, 17, 22);

- mate with the port member's cradle (*id.* at 13, 17, 22)

- repositionable (*id.* at 13, 17, 22);

- mate to the top surface of the port member (*id.* at 13, 17, 19, 22);

- mounted to the port member at different locations (*id.* at 22).

Snap Dock's Motion further assumes the term "complementary" to mean "inverse in surface shape" based on no evidence. *Id.* at 19. Contrary to Snap Dock's arguments, claim 29 does not require the bottom of the bow stop to be "inverse in surface shape" to the port cradle. Snap Dock assumes the term "closes" to mean something other than "not merely blocks" which is not supported by the claim 29 language. *Id.* Snap Dock also assumes the term "separate" as "to set or keep apart; detach" using a dictionary definition. *Id.* at 22. Snap Dock goes so far as even interpreting the term "opening to the cradle" using an attorney annotated picture that has no support. *Id.* at 14-15.

Below are just some of the examples of Snap Dock's reliance upon non-existent claim limitations for its non-infringement positions:

| Snap Dock's Non-Existent Claim Limitations | Language of Claim 29 |
|---|---|
| "The plain language of claim 29 requires that the bow stop be a separate piece form the port so that it can be mounted thereto *at different locations* making the modular port and bow stop customizable." ECF No. 76 at 22 (emphasis added). | There is no limitation in claim 29 that requires the bow stop to be "mounted at different locations" to the port member. *See* ECF No. 78-8. |
| "Claim 29 also requires that the bow stop's bottom surface be shaped complementary to the *V-shaped cradle*." ECF No. 76 at 17 (emphasis added). | There is no limitation in claim 29 that the cradle is V-shaped. *See* ECF No. 78-8. |
| Claim 29 requires the bottom surface of the bow stop to be *inverse in shape* to the port cradle so that it "closes" *not merely blocks* an opening to the cradle. ECF No. 76 at 18-19 (emphasis added). | These limitations are not in claim 29. *See* ECF No. 78-8. |
| Claim 29 requires the bottom surface of the bow stop to "*mate* with the port member's cradle." ECF No. 76 at 26 (emphasis added). | Claim 29 does not require the bottom surface of the bow stop to mate with the port member's cradle. *See* ECF No. 78-8. |
| "[T]he bottom surface of the alleged bow stop is not shaped complementary to the port cradle such that the two could *mate* together…" ECF No. 76 at 27 (emphasis added). | Claim 29 does not require to bottom surface of the bow stop to mate with the port member's cradle. *See* ECF No. 78-8. |

| Snap Dock's Non-Existent Claim Limitations | Language of Claim 29 |
|---|---|
| Pictures "placing the bottom of the alleged 'bow stop' on the cradle **on** the alleged port member." ECF No. 76 at 27-28 (emphasis added). | Claim 29 does not require the bow stop to be placed on top of the port member. *See* ECF No. 78-8. |
| Claim 29 requires the "bottom of the bow stop" to "**fit into**" the "port cradle." ECF No. 76 at 28 (emphasis added). | Claim 29 does not require the bottom of the bow stop to fit into the port cradle. *See* ECF No. 78-8. |
| Claim 29 requires the "bottom of the alleged bow stop" to "**fit together**" with the "port's **V-shaped** cradle." ECF No. 76 at 29 (emphasis added). | Claim 29 does not require the bottom of the bow stop to "fit together" with the port's cradle. Further, the cradle is not required to be "V-shaped." *See* ECF No. 78-8. |

Accordingly, Snap Dock's Motion should be denied because it is based on non-existent claim limitations.

### E.      In Addition, Snap Dock's Motion Should Be Denied Because It Violates the Court's Scheduling Order.

Aside from the merits, this Court should deny Snap Dock's Motion because it directly violates the *Patent Case Management Plan* in this case. *See* ECF No. 46. That scheduling order, which was jointly proposed by the parties and based on the Court's *Uniform Patent Case Management Plan*, states, in relevant part, that:

> **Absent leave of court, and for good cause shown, all issues raised on summary judgment under Fed. R. Civ. P. 56 must be raised by a party in a single motion. Issues of claims construction, infringement/non-infringement, and invalidity must be briefed at this time.**
> \*\*\*
> The parties will proceed under a four-brief schedule. EZ Dock must file any dispositive motion by the above due date [**April 3, 2023**]; Snap Dock must file any dispositive motion within **28 days thereafter**, along with a consolidated brief in support/brief in opposition to the plaintiff's motion; EZ Dock must file a consolidated brief in opposition/reply in support within **28 days thereafter**; and Snap Dock may file any reply in support of its own motion within **14 days thereafter**. If EZ Dock does not file a dispositive motion, any dispositive motion by Snap Dock is due no later than **May 1, 2023**, 18 months from the Anchor Date, and briefing will proceed according to Local Rule 56-1.
> \*\*\*

> Counsel may confer and propose by motion a modified schedule and page limits different from those prescribed by Local Rule 7-1 so long as the briefing is completed within the time contemplated by this section.

*Id.* at § IV.D. (emphasis in original). Snap Dock violated the order because it did not seek "leave of court" or "confer" with opposing "[c]ounsel" prior to filing its motion, which solely relates to the issue of "non-infringement," and which contravenes the "four brief," "single motion" procedure and schedule detailed in the order that was to commence with a filing by EZ Dock (not Snap Dock). *Id.*

As this Court has previously explained, "[a] primary reason for the case management order's prohibition of serial summary judgment practice is the court's heavy work load and the time and resources the court and the parties must devote to summary judgment practice." *Design Basics, LLC v. T.K. Constructors Inc.,* No. 1:16-cv-01841, 2016 WL 9274931, at *1 (S.D. Ind. Oct. 19, 2016) (M.J. McVicker Lynch) (denying motion for leave to file a summary judgment because "it is not efficient . . . to permit serial summary judgment motions"); *see Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, No. 1:14–cv–1734, 2015 WL 4523514, at *2 (S.D. Ind. July 27, 2015) (denying motion for summary judgment as "against the policy of this Court" because it violated the briefing schedule in the case management plan).[6] In this case, the timing of Snap Dock's Motion is particularly inappropriate because the parties are in the middle of discovery. *See* ECF No. 46 § IV. Under the Court's scheduling order, "liability discovery" remains open until "October 31, 2022," and EZ Dock is not required to disclose its infringement expert(s) until "August 29, 2022" (which it intends to do). *Id.* at §§ IV.A., C. Moreover, to date, Snap Dock has

---

[6] *See also* S.D. IND. L.R. 56-1 at *Advisory Committee Comments* (explaining that where, as in this case, "the parties anticipate cross-motions for summary judgment, the briefing schedule and format should be addressed ***in the case management plan*** (emphasis added)).

not produced a single document in response to EZ Dock's discovery requests,[7] and no depositions (including that of the declarant of Snap Dock's supporting declaration (ECF No. 77)) have occurred.[8] Accordingly, under the plain terms of this Court's scheduling order, and given the posture of this case, Snap Dock's Motion for summary judgment should be denied as premature.[9]

## V.   CONCLUSION

For the foregoing reasons, EZ Dock respectfully requests that the Court deny Snap Dock's Motion.

/s/ Brian C. Bianco

Brian C. Bianco
(admitted *pro hac vice,* IL 6281029)
Julia R. Lissner
(admitted *pro hac vice*, IL 6294431)
Thomas Fullerton
AKERMAN LLP
71 South Wacker Drive
46th Floor
Chicago, IL 60606
Tel: (312) 634-5700
Fax: (312) 424-1905
brian.bianco@akerman.com
julia.lissner@akerman.com
thomas.fullerton@akerman.com

---

[7] Snap Dock's inclusion of "SNAP" Bates numbers on some exhibits to its Motion is misleading and conflicts with the fact that it has not yet produced any documents. *See, e.g.,* ECF Nos. 78-7, 78-8, 78-9.

[8] Snap Dock's citation to *Waterloo Furniture Components, Ltd. v. Haworth, Inc.,* 467 F.3d 641 (7th Cir. 2006) does not stand for Snap Dock's claim that "Courts regularly grant summary judgment prior to any discovery taking place" and should do so in this patent infringement case. ECF No. 76 at 11. Rather, that "breach of contract" case explains, as a general matter, that "the fact that discovery is not complete" is not necessarily a basis to defeat summary judgment. *Waterloo,* 467 F.3d at 644, 648.

[9] To the extent the Court is inclined to substantively rule on Snap Dock's current Motion and Snap Dock "loses the current motion," Snap Dock should "not be permitted to bring a second motion" for summary judgment due to the fact that "the case management order does not permit a party to bring serial motions for summary judgment." *Kratzer v. Scott Hotel Group, LLC*, No. 4:17-cv-00212, 2019 WL 2119729, at *1 (S.D. Ind. Mar. 27, 2019) (M.J. McVicker Lynch).

Alejandro Fernandez
(admitted *pro hac vice,* FBN 32221)
AKERMAN LLP
401 East Jackson Street
Suite 1700
Tampa, FL 33602
Tel: (813) 223-7333
Fax: (813) 223-2837
alex.fernandez@akerman.com

*Counsel for Plaintiff*
*E-Z-Dock, Inc.*