UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| E-Z DOCK, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:21-cv-02761-TWP-DML |
| SNAP DOCK, LLC, | ) ) ) |
| Defendant. | ) ) |
| SNAP DOCK, LLC, | ) ) |
| Counter-Claimant, | ) ) |
| v. | ) ) |
| E-Z DOCK, INC., | ) ) |
| Counter-Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

This patent dispute is before the Court on a Motion for Summary Judgment of Non-infringement filed by Defendant Snap Dock, LLC, ("Snap Dock"), pursuant to Federal Rule of Civil Procedure 56 (Filing No. 75).  Plaintiff E-Z Dock, Inc. ("E-Z Dock") initiated this action alleging that Snap Dock's product—a floating dock for Jet Skis or personal watercrafts (the "Snap Port")—infringes its U.S. Design Patent No. 7,918,178 (the "'178 patent") (Filing No. 1; Filing No. 79).  Snap Dock seeks summary judgment contending the Snap Port: (1) does not literally infringe the '178 patent, (2) does not equivalently infringe the '178 patent, and (3) alternatively, the doctrine of equivalents is inapplicable due to claim vitiation and prosecution history estoppel (Filing No. 76; Filing No. 80).  For the reasons set forth below, Snap Dock's Motion for Summary Judgment of Non-infringement is **denied**.

## I. FACTUAL BACKGROUND

The following facts are not necessarily objectively true, but, as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to E-Z Dock as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. The Parties and Watercraft Ports

This patent infringement dispute concerns floating watercraft ports. These watercraft ports are used to dock jet skis or other personal watercrafts out of the water (Filing No. 78-12). E-Z Dock has been a leader in the development, manufacturing, and sale of floating watercraft ports (Filing No. 1). On April 5, 2011, the '178 patent entitled "Modular Floating Watercraft Port Assembly" was issued to E-Z Dock (Filing No. 1-9 at 2; Filing No. 78-9 at 2-5). Because the ports are modular, the owner can customize them as needed (Filing No. 78-9). The "Summary of the Disclosure" section of the '178 patent explains that customization of a port is accomplished by using three separate and distinct pieces: "an entry member, an extension member, and bulkhead (or bow stop)." (Filing No. 1-9 at 25.) The entry member and the extension member form the port and include rollers and a cradle that extends along the length of the port members and is open at both ends. *Id*. The '178 patent discloses two types of bow stops: a full bow stop that extends the full width of the port member and a small bow stop. *Id*. The bow stops can be positioned on the entry and extension members. *Id*. The bow stop includes an upper surface, a front surface, a back surface, side surfaces, and a bottom surface. *Id*.

Like E-Z Dock, Snap Dock is in the business of developing, manufacturing, and selling floating watercraft ports (Filing No. 1). Sometime after 2018, Snap Dock developed its own floating watercraft port—the Snap Port—with a bow stop that is alleged to be integral with and unremovable from the port (Filing No. 78). Soon thereafter, E-Z Dock sued Snap Dock for patent

2

infringement alleging the Snap Port infringes claim 29 of the '178 patent (Filing No. 1; Filing No. 21). Claim 29 reads:

> **29**. A floating watercraft port comprising:
>
> > a port member having an upper surface, a bottom surface, side surfaces, a front surface and a back surface; a cradle being formed in at least a part of said upper surface; said cradle extending rearwardly from said front surface; wherein said front surface defines an opening to said cradle which is sized and shaped complementarily to the shape of said cradle and said back surface of said port member defines an entrance to said cradle; said cradle being defined by a pair of opposed inwardly sloping walls; a plurality of roller sockets positioned along said cradle walls and rollers received in said roller sockets; and *a bow stop which is separate from and mountable to said port member at the front of said port member; said bow stop comprising a top surface, a front surface, side surfaces, a back surface and a bottom surface; at least a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle such that when said bow stop is mounted to said port member, said bow stop closes said opening to said cradle at the front of said port member.*

(Filing No. 78-8 at 32) (emphasis added).

**B.     The '178 Patent's Prosecution History**

When prosecuting the '178 patent, the application was amended to overcome a rejection of certain claims based on a previous U.S. Patent No. 7,481,175 ("Dickman") (Filing No. 78-9 at 148; Filing No. 78-9 at 245-46; Filing No. 78-9 at 298). The Dickman disclosed a bow stop that was integral with and unremovable from the port (Filing No. 78-9 at 245-46). E-Z Dock distinguished its patent by arguing that, unlike the Dickman, the '178 patent consisted of two distinct pieces—a separate or removal bow stop and the port—of which the bow stop could be mounted to the port (Filing No. 78-9 at 131; Filing No. 78-9 at 147; Filing No. 78-9 at 148; Filing No. 78-9 at 245-46; Filing No. 78-9 at 298). Similarly, E-Z Dock argued that, unlike the Dickman, a portion of the "bottom surface" of its bow stop is "shaped complementarily" to the port cradle so as to facilitate the closing of the opening to the cradle (Filing No. 78-8 at 32; Filing No. 78-9 at 47; Filing No. 78-9 at 240-46; Filing No. 78-9 at 292-93; Filing No. 78-9 at 302).

C.     **Procedural History**

E-Z Dock initially commenced this action in the Middle District of Florida against Snap Dock and its lead U.S. distributor for (1) trade dress pursuant to § 43(a) of the Lanham Act, (2) infringement of the '178 patent pursuant to 35 U.S.C. § 271(a), and (3) unfair competition in violation of Florida's Deceptive and Unfair Trade Practices Act—Fla. Stat. § 501.204—and common law. *See E-Z Dock, Inc. v. Snap Dock, LLC et al.*, M.D. Fla. Case No. 2:21-cv-450. E-Z Dock sought (1) to enjoin Snap Dock's continued infringement pursuant to 35 U.S.C. § 283, (2) to have all infringing products destroyed, (3) compensation pursuant to 35 U.S.C. § 284, and (4) an award of attorney fees pursuant to 35 U.S.C. § 285. *Id.* Count two of E-Z Dock's Complaint—patent infringement of the '178 patent—against Snap Dock was severed and transferred to this District (Filing No. 7; Filing No. 8). Snap Dock filed this instant Motion, E-Z Dock then filed a response, and Snap Dock replied (Filing No. 75; Filing No. 79; Filing No. 80).

II.     **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate in a patent infringement case—like in any other case—when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a); *see e.g.*, *Cook Inc. v. Endologix, Inc.*, 2012 WL 3779205, *4 (S.D. Ind. Aug. 31, 2012). The Court views the record in the light most favorable to the non-moving party—E-Z Dock—and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). However, inferences supported by only speculation or conjecture will not defeat a summary judgment motion. *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). The Court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to a particular part of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 572-73 (7th Cir. 2017).

### III.   DISCUSSION

E-Z Dock claims that its competitor Snap Dock—a relative newcomer to the market for floating watercraft ports, at least compared to E-Z Dock—is infringing claim 29 through the use, sale, and offer for sale of the Snap Port. Snap Dock contends no reasonable jury could find claim 29, properly construed, to be infringed either literally or under the doctrine of equivalents because at least two claim elements are missing: (1) "a bow stop which is separate from or mountable to the port member" and (2) "a portion of said bottom surface of said bow stop being shaped complementarily to said port cradle." Snap Dock asserts that its bow stop is neither separate from nor mountable to the port member because its bow stop and port are one unitary structure. Snap Dock also claims that its bow stop does not have a bottom, let alone one that is complementarily to the cradle because its integral with and unremovable from the port member and, therefore, the

bow stop does not have its own distinct bottom surface as required by claim 29. In the alternative, Snap Dock argues the doctrine of equivalents is inapplicable due to claim vitiation and prosecution history estoppel. E-Z Dock disputes Snap Dock's arguments and further argues Snap Dock's Motion violates the Patent Case Management Plan and, as such, should be denied.

The Court will first address E-Z Dock's procedural argument and then address Snap Dock's substantive non-infringement arguments.

A. **Whether Snap Dock's Motion Violates the Patent Case Management Plan**

E-Z Dock argues that Snap Dock violated the Patent Case Management Plan when it failed to seek leave of court or confer with opposing counsel before filing this Motion. (Filing No. 46; Filing No. 79 at 32.) E-Z Dock cites two cases in support of its argument. *See Design Basics, LLC v. T.K. Constructors Inc.*, 2016 WL 9274931, *1 (S.D. Ind. Oct. 19, 2016) (denying defendant's motion for leave to amend a summary judgment motion); *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 2015 WL 4523514, *2 (S.D. Ind. July 27, 2015) (denying defendant's motion for partial summary judgment as premature where it was clear the defendant contemplated filing future summary judgment motions).

Here, the only limitation placed on the filing of dispositive motions, as found in the Patent Case Management Plan, is that "[a]ny dispositive motions must be filed no later than April 3, 2023, 17 months from the Anchor Date." (Filing No. 46 at 4.) Snap Dock filed the instant Motion on June 9, 2022, and therefore complied with the Patent Case Management Plan (Filing No. 75). The Patent Case Management Plan prevents dispositive motions after April 3, 2023—not before (Filing No. 46 at 4). Moreover, both cases relied upon by E-Z Dock are unpersuasive here. This is Snap Dock's only motion for summary judgment, and it is unclear whether Snap Dock is contemplating filing another summary judgment motion. If Snap Dock were to move for leave to file another summary judgment motion, then E-Z Dock's argument may be more persuasive at that juncture.

6

As such, Snap Dock was under no obligation to seek leave from the Court or confer with E-Z Dock's counsel prior to filing the instant Motion because it was timely under the Patent Case Management Plan. The Court finds all other arguments on this issue to be unpersuasive.

B.  **Whether the Snap Port Infringes E-Z Dock's '178 Patent**

The determination of patent infringement is a two-step inquiry. *Cook Inc.*, 2012 WL 3779205 at *5. First, the court must construe the asserted claims as a matter of law by determining the meaning and scope of the words of the claims. *Id*. (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372–74 (1996)). Second, "the court must determine whether the accused product or process contains each limitation of the properly construed claims, either literally or by substantial equivalent." *Id*. (quoting *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005)). The second step is a question of fact. *Id*. A genuine dispute over any material fact in this inquiry makes summary judgment improper. *See, e.g.*, *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1315 (Fed. Cir. 2009).

1.  **Claim Construction**

Generally, the words of a claim are given their "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Absent a dispute as to the meaning of the language, claim construction is not necessary. *O2 Micro Int'l Ltd. V. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "[A] court is not required to hold an evidentiary *Markman* hearing when undertaking claim construction." *Lifetime Products, Inc. v. GSC Technology Corp.*, 321 F. Supp. 2d 938, 941 (N.D. Ill. 2004) (quoting *Ballard Med. Prods. V. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001)). Once a district court has construed the relevant claim terms, and unless altered by the district court, that legal determination governs for purposes of trial. *Cook Inc.*, 2012 WL 3779205 at *6.

Here, the parties agree the Court should apply the "plain and ordinary meaning" when interpreting claim 29 (Filing No. 76; Filing No. 79). Both parties agree the "separate from and mountable" limitation requires that the bow stop and port member be two distinct pieces rather than one unitary piece (Filing No. 76 at 22). The Court, therefore, need not construe the "separate from and mountable" limitation because it is not disputed. Snap Dock, however, argues the Snap Port does not satisfy the "separate from and mountable" limitation because its bow stop and port are one unitary piece with the bow stop being integral and unremovable from the port. (Filing No. 76 at 22.) Whether Snap Port's bow stop and port are one unitary piece, or two pieces, is a factual matter that should be determined by a jury.

The parties do not dispute the meaning of "complementarily" nor that when the bow stop, and cradle are configured together it results in the closing of the opening to the cradle. Therefore, at this stage, the Court need not construe this term's meaning. However, the parties dispute whether Snap Port's bow stop has a bottom and whether the cradle has a "U" or "V" shape (Filing No. 76 at 13; Filing No. 79 at 30). Whether the cradle has a "U" or "V" shape is irrelevant as it is only material that the bow stop be "complementarily" to the cradle thereby allowing its opening to close. Whether Snap Port's bow stop has a bottom is another factual matter that should be determined by a jury. Only after determining whether the bow stop has a bottom can one determine if it is also complementarily to the cradle.

Although the Court is not required to hold a *Markman* hearing prior to claim construction, and since the parties have yet to request one, the Court will set a deadline of December 9, 2022, for E-Z Dock to request a *Markman* hearing on claim 29 of the '178 patent.

### 2.      **Patent Infringement**

To prove infringement, a patentee "must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every

8

limitation of the properly construed claim." *Seal-Flex, Inc. v. Athletic Track & Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). The patentee has the burden of proving infringement by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). There are, however, certain limitations on a patentee's ability to obtain an infringement verdict under the doctrine of equivalents: (1) claim vitiation and (2) prosecution history estoppel. *Id*. At 29.

        **i.**      **<u>Literal Infringement</u>**

Literal infringement occurs when "every limitation set forth in a claim … [is] found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "[A] literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). The analysis begins by comparing each limitation in every disputed claim to discover if the limitations are present in the accused device. *Cook Inc.*, 2012 WL 3779205 at *5. If even one limitation is not met, a literal infringement claim fails. *Id*. While a "party may not avoid summary judgment simply by offering an opinion of its expert that states, in effect, that the critical claim limitation is found in the accused device," a party can preclude the granting of summary judgment by relying on an expert that sets forth the "factual foundation for his infringement opinion in sufficient detail for the court to be certain that

9

the features of the accused product would support a finding of infringement." *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Technology Limited*, 983 F.3d 1367, 1380-81 (Fed. Cir. 2021).

Here, Snap Dock claims at least two limitations of claim 29 are missing from its Snap Port and, as such, there cannot be infringement, literally or equivalently, because Snap Port's bow stop and port member are one unitary structure, much like the Dickman, and the bow stop does not have a bottom let alone one shaped complimentarily to the cradle. (Filing No. 76.) However, E-Z Dock has put forth evidence in the form of two affidavits disputing facts central to determining whether some, if not all, limitations of claim 29 are present in the Snap Port (Filing No. 79-1; Filing No. 79-2). The first affiant, Robert Blakley, has worked with E-Z Dock since 2016 and is currently its Senior Vice President (Filing No. 79-1 at 2). The second affiant, Richard D. Hepburn, is a licensed engineer and now retired Captain of the United States Navy (Filing No. 79-2).

Both Mr. Blakley and Mr. Hepburn disagree with Snap Dock's President's, Blake Elder, affidavit on several grounds, including but not limited to: (1) whether Snap Port's bow stop and port member are one unitary piece, and (2) whether Snap Port's bow stop has a bottom (Filing No. 77; Filing No. 79-2 at 11-12). Mr. Blakley opined that the Snap Port does not have an integral, non-removable bow stop but instead concludes "the Snap Port is a two-piece design that allows one piece to be mounted to the other, with one piece having each feature of the claimed port member and the other piece having each feature of the claimed bow stop." (Filing No. 79-1 at 11.) Mr. Blakley concluded the Snap Port satisfied all the limitations found in claim 29. *Id*. Mr. Hepburn reported the "Snap Dock LLC entry port matches the 178 Patent Claim 29 port member," (Filing No. 79-2 at 7), and the "bow stop matches the 178 Patent Claim 29 bow stop." *Id*. At 9. Mr. Hepburn found that "[t]he Snap Port has a bow stop which is separate from and mountable to the port member. The Snap Port bow stop has a bottom surface, and a portion of the bottom surface

10

of the bow stop is shaped complimentarily to the port cradle." *Id*. At 13.  Mr. Hepburn concluded that the Snap Port included all limitations found in claim 29.

Because the Court cannot weigh evidence or make credibility determinations on summary judgment and in light of E-Z Dock's evidence—Mr. Blakley's and Mr. Hepburn's affidavits—the Court, drawing all reasonable inferences in E-Z Dock's favor, finds that E-Z Dock has presented evidence to create a triable issue of fact as to the true structure of the Snap Port.  Accordingly, summary judgment on this basis is inappropriate.

### ii.     **Doctrine of Equivalents**

If literal infringement cannot be proven, a patent may still be infringed under the doctrine of equivalents.  *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014).  A finding of equivalence is a factual determination.  *See Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 731 F.2d 840, 847 (Fed. Cir. 1984). The Federal Circuit "applies two articulations of the test for equivalence:" (1) the function-way-result test and (2) the insubstantial differences test.  *Voda v. Cordis Corp.*, 536 F.3d 1311, 1326 (Fed. Cir. 2008).  "[U]nder the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" *Voda*, 536 F.3d at 1326. Under the insubstantial differences test, an element in the accused device is equivalent to a claim limitation "if the only differences between the two are insubstantial." *Id*. The patentee bears the burden of satisfying one of these tests by a preponderance of the evidence. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).

Here, E-Z Dock asserts that it has presented sufficient evidence to create a triable issue of fact regarding its doctrine of equivalents theory through its expert's opinion and analysis (Filing No. 79-1; Filing No. 79-2).  The Court agrees.  Mr. Hepburn's affidavit suggests no difference between the Snap Port and the '178 patent.  (Filing No. 79-2 at 2-14.)  Snap Dock argues the Court

cannot find that the Snap Port is equivalent to the '178 patent because doing so would effectively read out certain claim limitations. (Filing No. 76 at 22.) However, on the current record, the evidence creates a triable issue of fact regarding whether a unitary structure—consisting of an integral bow stop and port member—is insubstantially different from the claimed bow stop and port member or whether the function-way-result test is met. Accordingly, summary judgment of non-infringement on this basis is inappropriate.

### iii.    Prosecution History Estoppel

Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution. *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). It can occur in two ways: "(1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Whether prosecution history estoppel applies is a question of law. *Id*. If a patentee makes an argument regarding one claim term that generates an estoppel, "the estoppel will apply to that term in other claims." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1584 (Fed. Cir. 1995).

Here, while the parties dispute whether Snap Port's bow stop and port member are one unitary piece or whether the bow stop has a bottom or whether the bottom is complementarily to the top of the cradle, the prosecution history as to the '178 patent is clear. Both parties agree claim 29 requires two distinct pieces—a removable bow stop and port—that allows for the bow stop to be mounted to the port. (Filing No. 76; Filing No. 79.) The prosecution history evidences the "separate from and mountable to the port member" limitation was added to overcome a rejection based on the Dickman device since it claimed an integral bow stop that was unremovable from the

port member ([Filing No. 78-9 at 148](); [Filing No. 78-9 at 245-46](); [Filing No. 78-9 at 298]()).  The range of equivalents accorded this limitation in claim 29 does not encompass a bow stop that is integral and unremovable from the port.  Further, the parties agree claim 29 also requires that a portion of the "bottom surface" of the bow stop be "shaped complementarily" to the port cradle ([Filing No. 78-8 at 32](); [Filing No. 78-9 at 47](); [Filing No. 78-9 at 240](); [Filing No. 78-9 at 293](); [Filing No. 78-9 at 302]()).  The Court agrees.  The range of equivalents accorded to this limitation in claim 29 cannot encompass a bow stop that is integral and unremovable from the port.  An integral bow stop that is unremovable from the port does not have its own bottom surface since it is integrated with the port through the unitary nature of the structure.  Only a bow stop with four distinct sides—such as the device claimed in the '178 patent—can be understood to have a bottom surface because it is not integral with, nor unremovable from, the port.

On the current record, there are triable issues of fact regarding whether Snap Port's bow stop and port member are one unitary piece—like the Dickman—or two distinct pieces as claimed in the claim 29, or whether Snap Port's bow stop has a bottom.  Therefore, summary judgment of non-infringement on this basis is inappropriate.

      iv.    **<u>Claim Vitiation</u>**

Claim vitiation has its clearest application where the accused device contains the polar opposite, or antithesis, of the claimed structure.  *Brilliant Inst., Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (7th Cir. 2013).  Under claim vitiation, "if a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claimed element, then the court should rule that there is no infringement under the doctrine of equivalents." *Power Integrations, Inc., v. Fairchild Semiconductor International, Inc.*, 843 F.3d 1315, 1344 (Fed. Cir. 2016); *see e.g.*, *CSP Technologies, Inc. v. Sud-Cheme AG*, 2014 WL 496828, *5 (S.D. Ind. Feb. 6, 2014) (finding that a one-piece container is not the equivalent of a two-piece container and to

find otherwise would entirely vitiate that claim element); *Wleklinski v. Targus, Inc.*, 258 Fed. Appx. 325, 329–30 (Fed. Cir. 2007) (refusing to apply the doctrine of equivalents where the proposed application would change "separate sections made of different materials" to "a single unitary material made of the same fabric"); *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (refusing to apply the doctrine of equivalents where the proposed application would change "mounted" to "unmounted").

Here, whether the doctrine of equivalents applies or would vitiate certain elements of claim 29 depends largely on disputed material facts, including but not limited to: (1) whether Snap Port's bow stop and port member are one unitary piece, and (2) whether Snap Port's bow stop has a bottom (Filing No. 79-2; Filing No. 77). Snap Dock claims that Snap Port's bow stop and port member are one unitary structure and that Snap Port's bow stop does not have a bottom let alone one complementarily to the cradle. *Id*. Snap Dock therefore argues the Snap Port does not infringe claim 29 under the doctrine of equivalents because such a finding would vitiate certain elements of claim 29, including but not limited to the bow stop being (1) "separate" from and (2) "mountable" to the port member, and (3) the bow stop having a "bottom" that (4) is "shaped complementarily" to the port cradle.

If it is determined that Snap Port's bow stop and port member are one unitary structure, then a finding of infringement under the doctrine of equivalents would vitiate the "separate from and mountable to said port member" element because, as the parties agree, this limitation requires that the bow stop and port member be two distinct pieces (Filing No. 76; Filing No. 79; Filing No. 80). Snap Port's alleged unitary structure would be the antithesis or opposite of the two-piece structure required by claim 29 of the '178 patent. Similarly, if it is determined that Snap Port's bow stop and port are one unitary structure and, therefore, the bow stop does not have a bottom, then a finding of infringement under the doctrine of equivalents would vitiate the "bottom surface

14

of [the] bow stop [be] shaped complementarily to [the] port cradle" element because claim 29 requires that the bow stop have its own distinct bottom surface.

The Court, drawing all reasonable inferences in E-Z Dock's favor, finds that there are triable issues of fact regarding the structure of the Snap Port that, once resolved, will aid in determining whether the doctrine of equivalents would vitiate certain elements of claim 29. Accordingly, the Motion for Summary Judgment of Non-infringement on this basis is **denied**.

## IV.   CONCLUSION

For the reasons stated above, Snap Dock's Motion for Summary Judgment of Non-infringement, ([Filing No. 75](#)), is **DENIED**.  On or before **Friday, December 9, 2022**, E-Z Dock shall request a *Markman* hearing or file a "final proposed claim construction" on claim 29 of the '178 patent.  If E-Z Dock files the final proposed claim construction, then on or before **Monday, December 19, 2022**, Snap Dock shall file "a statement of no objection" or its "final proposed claim construction."

**SO ORDERED.**

Date:  11/15/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alejandro J. Fernandez
AKERMAN LLP
alejandro.fernandez@akerman.com

Brian C. Bianco
AKERMAN LLP
brian.bianco@akerman.com

Julia Renee Lissner
AKERMAN LLP
julia.lissner@akerman.com

Thomas B Fullerton
AKERMAN LLP

15

thomas.fullerton@akerman.com

Anthony Richard Zeuli
MERCHANT & GOULD
tzeuli@merchantgould.com

Charles Johnson Meyer
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
cmeyer@uspatent.com

Daniel James Lueders
WOODARD EMHARDT HENRY REEVES & WAGNER, LLP
lueders@uspatent.com

Joseph Dubis
MERCHANT & GOULD P.C.
jdubis@merchantgould.com

Thomas J. Leach
MERCHANT & GOULD
tleach@merchantgould.com