UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| E-Z DOCK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02761-TWP-KMB |
| | ) | |
| SNAP DOCK, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SNAP DOCK, LLC, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| E-Z DOCK, INC., | ) | |
| | ) | |
| Counter Defendant. | ) | |

## <u>ORDER ON THE PARTIES' MOTIONS TO COMPEL</u>

Currently pending before the Court are motions to compel filed by each of the Parties in this case against each other. [Dkts. 103; 106.] For the reasons detailed below, the Court grants each of the motions in part and denies each of the motions in part.

## I. RELEVANT BACKGROUND

This is a patent dispute between Plaintiff/Counter defendant E-Z Dock, Inc. ("E-Z Dock") and Defendant/Counter claimant Snap Dock, LLC ("Snap Dock"). E-Z Dock initiated this action alleging that Snap Dock's product—a floating dock for jet skis or other personal watercrafts (the "Snap Port")—infringes E-Z Dock's U.S. Design Patent No. 7,918,178 (the "'178 patent"), which was issued to E-Z Dock on April 5, 2011. [Dkts. 1; 1-9 at 2; 78-9 at 2-4; 79.]

1

Like E-Z Dock, Snap Dock is in the business of developing, manufacturing, and selling floating watercraft ports. [Dkt. 1.] Sometime after 2018, Snap Dock developed its own floating watercraft port—the Snap Port—with a bow stop that is alleged to be integral with and unremovable from the port. [Dkt. 78.] Soon thereafter, E-Z Dock sued Snap Dock for patent infringement, alleging that the Snap Port infringes claim 29 of the '178 patent. [Dkts. 1; 21.]

E-Z Dock initially commenced this action in the Middle District of Florida against Snap Dock and its lead U.S. distributor for 1) trade dress pursuant to § 43(a) of the Lanham Act, 2) infringement of the '178 patent pursuant to 35 U.S.C. § 271(a), and 3) unfair competition in violation of Florida's Deceptive and Unfair Trade Practices Act and common law. *See E-Z Dock, Inc. v. Snap Dock, LLC, et al.*, No. 2:21-cv-450 (M.D. Fla. filed Jun. 8, 2021). Count II of E-Z Dock's Complaint (patent infringement of the '178 patent) was severed and transferred to this District on October 29, 2011. [Dkts; 7; 8.] The Middle District of Florida ultimately granted judgment on the pleadings in favor of Snap Dock, which E-Z Dock has asked that court to reconsider.

In our case, Snap Dock filed a Motion for Summary Judgment of Non-Infringement, [dkt. 75], which the Court ultimately denied, [dkt. 101]. While that motion was pending, Snap Dock moved for suspension of all remaining case deadlines pending the Court's ruling on its summary judgment request, [dkt. 81], which the Court denied, [dkt. 85]. In doing so, the Court pointed out "that several years ago this [District] replaced its uniform patent case management plan that provided for separate stages for discovery and briefing of the patent issues (e.g., claims construction, infringement, invalidity) in favor of the current uniform plan that creates a single set of deadlines for discovery, expert development, and summary judgment briefing." [Dkt. 85 at 2.] In denying Snap Dock's deadline suspension request, the Court noted that Snap Dock had not yet

produced a single document and had filed an early summary judgment motion, which essentially served as an "attempt[] to end-run around the orderly progression for patent cases that this court has adopted."  [Dkt. 85 at 2.]

Within one month of that ruling, the Parties were engaged in discovery disputes that necessitated a discovery conference with the assigned Magistrate Judge on October 13, 2022.[1] [Dkt. 93.]   The Magistrate Judge opened that discovery conference by clearly laying out expectations for how the remainder of discovery would proceed in this case.  She specifically told counsel that discovery "is not a game" and "not a chess match."  She emphasized that it is critical that there be actual production of documents, not vague references to production at a reasonable time and a reasonable place at some unknown time in the future.  She ordered the Parties to agree on search terms and set dates for actual production of documents.  She stated that boilerplate objections and general objections are subject to being stricken in their entirety.  She emphasized that discovery responses must make clear what is being produced and what is not.  And she concluded these expectations with her observations that, "I don't perceive that that has happened from either side."  Going forward, the Magistrate Judge set forth clear expectations that counsel would follow through, agree on things, stop making broad objections to forestall "the real work of discovery," and make written responses to discovery requests that make clear what is happening and what is being produced.

---

[1] U.S. Magistrate Judge Debra McVicker Lynch was the assigned magistrate judge to this case at that time.  Following her well-deserved retirement on October 31, 2022, U.S. Magistrate Judge Kellie M. Barr was assigned to this case.  [Dkt. 100.]  Judge Barr has listened to the audio recording of the October 13, 2022 Discovery Conference that the Parties had with Judge Lynch and adopts and emphasizes the clear and reasonable expectations for discovery set forth therein and summarized above.

After that Discovery Conference, the Court adopted the Parties' proposed deadlines for amending or supplementing certain discovery responses and for filing motions to compel as to liability issues. [Dkt. 98.] That resulted in the pending Motions to Compel, raising sixteen separate issues on which the Court now rules. [Dkts. 103; 106.]

## II.  APPLICABLE STANDARD

"Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial." *Todd v. Ocwen Loan Servicing, Inc.*, 2020 WL 1328640, at *1 (S.D. Ind. Jan. 30, 2020) (citing 8 Wright & Miller, Federal Practice and Procedure § 2001, at 44-45 (2d ed. 1994)).  Federal Rule of Civil Procedure 26(b)(1) outlines the scope of permissible discovery and provides that parties to a civil dispute are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of admissibility.  *Est. of Daniels by Stover v. City of Indianapolis*, 2021 WL 4844145, at *1 (S.D. Ind. Oct. 18, 2021) (citing Fed. R. Civ. P. 26(b)(1)). The burden "rests upon the objecting party to show why a particular discovery request is improper[,]" and the objecting party "must show with specificity that the request is improper." *Hunt v. Hubler Chevrolet, Inc.*, 2019 WL 1043163, at *2 (S.D. Ind. Mar. 4, 2019).

The Court's resolution of discovery disputes is guided by proportionality principles. Proportionality is determined by considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1). "Proportionality, like other concepts, requires a common sense and experiential assessment." *Todd*, 2020 WL 1328640, at *4 (citing *BankDirect Capital Fin., LLC v. Capital Premium Fin.,*

4

*Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'").

The Court has wide discretion in balancing these factors and deciding the appropriate scope of proportional discovery. *See Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs., Inc.*, 755 F.3d 832, 839 (7th Cir. 2014) (citations and quotations omitted) (emphasizing that district courts "enjoy broad discretion in settling discovery disputes and in delimiting the scope of discovery in a given case."). Part of this discretion involves limiting requests where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Courts may also limit discovery where the objecting party shows "that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B).

### III. DISCUSSION

In ruling on the Parties' discovery disputes, the Court keeps a few overarching principles in mind. First, the transfer of E-Z Dock's patent infringement claim from Florida to Indiana clearly caused delay in discovery responses, production, and case progress for which both Parties are responsible. While that delay was unnecessary and could have been avoided had counsel for both Parties worked together and proactively adhered to the general discovery conduct expectations detailed by the Court in the October 2022 Discovery Conference, it is apparent that did not happen.

Second, this case is relatively narrow for a patent case—it involves one patent (E-Z Dock's '178 Patent), one claim at issue in that patent (claim 29), and one accused product (the Snap Port).

E-Z Dock is a large company with at least a thirty-year history in the dock and port industry that includes products that span far beyond the '178 Patent that Snap Dock's accused product is alleged to have infringed upon.  Many of Snap Dock's discovery requests expect E-Z Dock to produce documents far beyond the narrow scope of the specific patent infringement claim at issue herein.  As a general matter, the Court does not find those broad requests to be proportional to the needs of this case, especially in light of the Court's next point.

Third, at least one of the Parties asserts that both Parties have likely already spent more in attorneys' fees in this action than the amount in dispute.[2]  [Dkt. 110 at 2.]  That is a jarring assertion for the Court to read and plays a role in determining proportionality in case discovery under Rule 26, given that the amount in controversy is one of the factors to consider.

With these three overarching principles in mind, the Court now turns to the issues set forth in the pending Motions to Compel.  [Dkts. 103; 106.]

## A.      Snap Dock's Motion to Compel

Snap Dock filed a Motion to Compel, asking the Court to order E-Z Dock to produce certain types of documents that it contends are relevant to this case and proportional to the needs of the case.  [Dkt. 103.]  The Court will address each of Snap Dock's eleven requests in turn.

### 1)   Standard Metadata

Snap Dock requests that E-Z Dock be required to produce "standard metadata fields" for the documents it has produced.  [Dkt. 104 at 5-7.]  While it admits that the controlling Patent Case Management Plan does not define "standard metadata fields," it contends those most certainly include "date created, date modified, author, and custodian."  [Dkt. 104 at 5.]

---

[2] The Court will address this assertion at the Parties' upcoming Status Conference on February 8, 2023, and intends to schedule a Settlement Conference in the near future.  The Parties should be prepared to discuss date availability at that conference.

E-Z Dock responds[3] that this request is a "non-issue" because its production "is not missing metadata." [Dkt. 111 at 11.] E-Z Dock contends that it has produced what is available, and it provides declarations from an IT executive and an attorney who oversaw and assisted with the production. [Dkts. 111 at 112; 111-11; 111-12.]

In light of E-Z Dock's attested representations that standard metadata has been produced, it appears that this may no longer be an issue. To the extent that Snap Dock believes it still is, the Court orders E-Z Dock to produce the standard metadata fields for the documents it has produced, including the date created, date modified, author, and custodian for each, **within 21 days of this Order**.

2) *Documents Demonstrating E-Z Dock's Purpose or Intent of Lawsuit (Document Request Nos. 1 and 39)*

Snap Dock seeks all non-privileged documents that demonstrate the purposes or intent of the current lawsuit. [Dkt. 104 at 8.] It contends that these are relevant because it believes E-Z Dock initiated this lawsuit to try to impede competition, since Snap Dock is a small, relatively new competitor in the market. [Dkt. 104 at 8.]

E-Z Dock responds by pointing out that it has already produced non-privileged, responsive documents related to the Snap Port and the '178 Patent at issue in this case. [Dkt. 111 at 19.] E-Z Dock contends that it has produced what is relevant and proportional to the needs of this lawsuit, and that anything broader would be only for purposes of the Florida trade dress case. [Dkt. 111 at 19.]

---

[3] E-Z Dock's response brief does not respond to the issues raised in Snap Dock's Motion to Compel in the same order that they were briefed by Snap Dock. This caused the Court to spend unnecessary time sorting through E-Z Dock's response brief to locate and address E-Z Dock's responsive arguments. When a brief raises multiple discrete issues, absent an extremely compelling reason not to do so, a responding party should brief each of those issues in the same order briefed by the moving party to ease the Court's review.

Snap Dock's requests at issue state:

> **REQUEST NO. 1:** Documents that tend to prove any purpose of or intent for bringing this case against Snap Dock, such as to harass, burden, or hinder competition.
>
> **REQUEST NO. 39:** All non-privileged documents relating to or referring to any and all motives for suing Snap Dock for infringement, either patent or trade dress.

The Court agrees that E-Z Dock need only produce the non-privileged documents related to its purpose or intent of suing Snap Dock for the alleged infringement of the '178 Patent at issue in this litigation.  The Court finds that requiring production beyond that is overbroad and not proportional to the needs of the case.  Thus, E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

> 3)  *Assignments, Licenses, Transfers, or Agreements Related to the '178 Patent (Document Request Nos. 8 and 18)*

Snap Dock seeks all assignments, licenses, transfers, or agreements related to the '178 Patent or any patents related to any floating watercraft port system, floating dock, or features thereof. [Dkt. 104 at 9.]  Snap Dock contends that these requests are directly related to Snap Dock's damages defense because the request seeks information related to the *Georgia-Pacific* factors that are used to calculate a reasonable royalty.  [Dkt. 104 at 9 (referencing *Georgia Pacific Corp. v. U.S Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y 1970)).]  While it admits that E-Z Dock has produced documents related to the '178 Patent, it contends that two of the *Georgia-Pacific* factors are broader than just the patent-in-suit.  [Dkt. 104 at 10.]

E-Z Dock responds by pointing out that Snap Dock's request is so broad that on its face, it would require E-Z Dock to provide documents on "all legal activities of EZ Dock's business since it was formed more than 30 years ago." [Dkt. 111 at 21.]  It challenges Snap Dock's request

8

because it is not limited by a time period or limited to license rates for patents comparable to the '178 Patent—as is key for *Georgia-Pacific* factor two—or to determining whether EZ Dock has a currently established licensing program—as is key for *Georgia-Pacific* factor four. [Dkt. 111 at 21.]

Snap Dock's requests at issue state:

> **REQUEST NO. 8:** Documents and Communications that are or relate to any assignments, licenses, transfers, or agreements related to the Asserted Patent or any patents related to any floating watercraft port system, floating dock, or features thereof.
>
> **REQUEST NO. 18:** All patent licenses, offers to license, attempts to negotiate a license, license negotiations, notice letters, demand letters, cease and desist letters, lawsuits, settlement negotiations, settlement agreements, or covenants not to sue related to modular floating docks or watercraft port assemblies identified in response to Interrogatory No. 7.

The Court finds it is appropriate to require E-Z Dock to produce documents related to license rates for patents comparable to the '178 Patent and documents related to a currently established licensing program, if one exists, since both Parties agree that information is relevant to the second and fourth *Georgia-Pacific* factors used to calculate a reasonable royalty. Any documents beyond the scope of that requirement are overbroad and not proportional to the needs of this case. Thus, E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

4) *E-Z Dock's Interpretation of Its Own Patents (Document Request No. 17)*

Snap Dock seeks documents showing E-Z Dock's prior litigation interpretations of its own patents to determine if E-Z Dock has previously taken incompatible positions. [Dkt. 104 at 10.] E-Z Dock responds that it has produced responsive, non-privileged answers related to the '178 Patent at issue in this case and that anything more than that would be overbroad and not proportional to the needs of the case. [Dkt. 111 at 21.]

Snap Dock's request at issue states:

> **REQUEST NO. 17:** All answers to any interrogatories in any case where E-Z
> Dock or predecessor-in-interest alleged patent infringement related to floating
> docks.

The Court finds that Snap Dock's request is overbroad and not likely to result in discovery that is proportional to the needs of the case to the extent it seeks information not related to the '178 Patent at issue in this litigation.  E-Z Dock states that it has already produced responsive, non-privileged responses related to the '178 Patent in response to this request.  The Court denies Snap Dock's request to expand the scope of the required production on this point.  Thus, E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

*5)  E-Z Dock's Communications Regarding Snap Dock (Document Request Nos. 21 at 42)*

Snap Dock seeks non-privileged documents and communications from E-Z Dock related to itself, its products, and this lawsuit.  [Dkt. 104 at 11.]  It contends that this information is relevant to how E-Z Dock viewed Snap Dock, its products, and this lawsuit.  [Dkt. 104 at 11.]

E-Z Dock responds that Snap Dock's request is overbroad, unduly burdensome, and not proportional to the needs of the case because it is not limited to the products and intellectual property at issue in this case.  [Dkt. 111 at 22-23.]  E-Z Dock points out that it has already agreed to produce responsive, non-privileged documents relating to the Snap Port since it is the alleged infringing product and the '178 Patent since it is the patent-in-suit.  [Dkt. 111 at 24.]

Snap Dock's requests at issue state:

> **REQUEST NO. 21:** Documents and Communications that are or relate to any
> communications between You and any other person related to Snap Dock and the
> Accused Dock Products, the Asserted Patent, or this lawsuit.

**REQUEST NO. 42:** All documents referring to or relating to Snap Dock.

The Court finds that these requests by Snap Dock are overbroad and not proportional to the needs of the case to the extent they seek information not related to the Snap Dock or the '178 Patent. E-Z Dock states that it has already agreed to produce responsive, non-privileged documents related to the '178 Patent in response to this request. The Court denies Snap Dock's request to expand the scope of the required production on this point. E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

6) *Post-Employment Communications with Inventors of the '178 Patent (Document Request No. 46)*

Snap Dock seeks all communications with the inventors of the '178 Patent—Dustin Imel and Curtis Downs—from after they left E-Z Dock's employment. [Dkt. 104 at 12.] It contends this communication would not be privileged and emphasize that E-Z Dock responded that it would not even search for such communications. [Dkt. 104 at 12.] Snap Dock acknowledges that E-Z Dock's counsel is representing Mr. Imel and Mr. Downs at their depositions in this case, and it is asking for communications only "from the time the inventors left E-Z Dock's employ until the time when the attorney-client relationship as to the deposition notice was established." [Dkt. 104 at 13 n.4.]

In response, E-Z Dock emphasizes that Snap Dock's request is not limited to the products and intellectual property at issue in this case and not limited to a specific time period since the inventors left E-Z Dock more than five years ago. [Dkt. 111 at 25.] It also contends that this request should be a non-issue because any non-privileged communications would already be produced in E-Z Dock's responses to other Snap Dock requests. [Dkt. 111 at 25.]

Snap Dock's request at issue states:

> REQUEST NO. 46: All communications between You and the inventors of the '178 patent since they left Your employ.

The Court orders E-Z Dock to produce non-privileged communications with Mr. Imel and Mr. Downs since they left E-Z Dock's employment **within 21 days** of the date of this Order, but only to the extent those communications are related to Snap Dock, the Snap Port, or the '178 Patent. The Court orders E-Z Dock to search for these documents specifically to confirm whether any exist that are not privileged and not already produced in response to other requests.   Thus, E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

7) *Documents Related to the Issues of the Case, including Docks, Ports, and Separate Bow Stops (Document Requests Nos. 47 and 49)*

Snap Dock emphasizes that this case is about the proper interpretation of dock, port, and bow stops, as well as the prior art thereto.  [Dkt. 104 at 13.]  Thus, Snap Dock seeks all non-privileged documents that relate to these topics and emphasizes that E-Z Dock refused to search for them.  [Dkt. 104 at 13-14.]

In response, E-Z Dock points out that its "entire business is selling ports and docks, and EZ Dock has been doing so for more than thirty years."  [Dkt. 111 at 26.]  E-Z Dock emphasizes that Snap Dock's request does not include a specified time period or otherwise limit itself to the '178 Patent or otherwise relevant topics to this lawsuit.

Snap Dock's requests at issue state:

**REQUEST NO. 47:** All documents related to docks or ports that mention, refer or relate to a separate bow stop.

**REQUEST NO. 49:** All photos of any port or dock and the associated metadata.

Given the breadth of E-Z Dock's business for more than thirty years and Snap Dock's failure to even attempt to limit these requests to a relevant time period, to the accused product, and/or to the patent-in-suit, the Court agrees with E-Z Dock that these requests are overbroad, unduly burdensome, and not proportional to the needs of this case. Thus, the Court denies Snap Dock's request that E-Z Dock be compelled to respond to these production requests any further than it already has.

*8)  Production of E-Z Dock's Amended Complaint Photographs (Request No. 20)*

Snap Dock seeks documents relating to E-Z Dock's investigation of the accused product shown in the First Amended Complaint, including all photographs with associated metadata. [Dkt. 104 at 14.] It contends that this information is relevant for Snap Dock to seek to understand the timing of E-Z Dock's infringement investigation as depicted in the First Amended Complaint and whether E-Z Dock performed a reasonable pre-suit investigation. [Dkt. 104 at 14.] Snap Dock points out that while E-Z Dock responded that it would produce responsive non-privileged documents relating to the accused product, it has not done so. [Dkt. 104 at 14.]

In response, E-Z Dock points out that it is uncertain how the information sought would be relevant to the claimed need. [Dkt. 111 at 13.] It further emphasizes that the Court has denied a summary judgment request by Snap Dock in this case, which E-Z Dock contends confirms the "substantive strength" of its complaint against Snap Dock. [Dkt. 111 at 13.]

Snap Dock's request at issue states:

**REQUEST NO. 20:** Documents relating to E-Z-Dock's investigation of the Accused Dock Products shown in the First Amended Complaint (transferred to Southern District of Indiana on October 29, 2021 (Dkt. 1)), including all photographs with associated metadata and receipts for purchasing the inspected Accused Dock Products.

The Court disagrees with E-Z Dock that denial of a summary judgment motion equates to a complaint's substantive strength—rather, denial of a summary judgment motion indicates that issues of material fact exist that prevent judgment as a matter of law.  Nevertheless, the Court agrees with E-Z Dock that it fails to see how the information Snap Dock seeks regarding images in the First Amended Complaint can reasonably be tied to relevant issues in this litigation regarding any infringement investigation conducted by E-Z Dock.  E-Z Dock confirms that it has already agreed to produce responsive, non-privileged documents related to the Snap Port in response to this request.  [Dkt. 111 at 14.]  Thus, the Court denies Snap Dock's Motion to Compel to the extent that it seeks information beyond that.  E-Z Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

*9)  Damages Discovery (Requests Nos. 8, 18, 23, 25, 26, 27, and 30)*

Snap Dock alleges that E-Z Dock has "refused to produce damages documents at this time." [Dkt. 104 at 16.]  It states that E-Z Dock does not deny that it will produce damages discovery "in due course," and Snap Dock points out the applicable discovery rules do not "permit a party to unilaterally withhold documents to some unspecified later date."  [Dkt. 104 at 16 (citing dkt. 97).]

In response, E-Z Dock asserts that Snap Dock's request to compel E-Z Dock to produce damages materials "is premature."  [Dkt. 111 at 15.]  As support for that conclusion, E-Z Dock cites the applicable Patent Case Management Plan ("CMP") in this action and concludes that it "bifurcates liability and damages issues."  [Dkt. 111 at 15 (citing dkts. 46; 97).]  While E-Z Dock confirms that it "intends to produce damages information in accordance with "the applicable

14

CMP," it does not state what date it thinks is appropriate for that and instead cites a May 2023 deadline set for E-Z Dock to make damage expert disclosures.  [Dkt. 111 at 15.]

Bifurcated discovery is "not the norm," and "seldom results in efficient case management." *Dean v. Pfizer, Inc.*, 2020 WL 12032895, at *2 (S.D. Ind. Dec. 9, 2020).  It can be appropriate in narrow circumstances where there is a discrete liability issue that is outcome-determinative, but "where discovery is expected to be wide-ranging and arduous no matter if the parties attempt to focus on only one alleged discrete issue first and/or where discovery cannot be so neatly divided among issues, overall case management tends to suffer too greatly for bifurcated discovery to produce the efficiencies touted by its proponent."  *Id.*

It is apparent from both Parties' arguments on this issue that they need guidance from the Court on the timing of damages discovery in this action.  As an initial matter, the Court disagrees that liability and damages discovery in this case was ever bifurcated.  The Court previously pointed out to the Parties "that several years ago this [District] replaced its uniform patent case management plan that provided for separate stages for discovery and briefing of the patent issues (e.g., claims construction, infringement, invalidity) in favor of the current uniform plan that creates a single set of deadlines for discovery, expert development, and summary judgment briefing." [Dkt. 85 at 2.]  While the CMP sets a separate damages expert disclosure deadline, that alone is not an indication that general, non-expert damages discovery is bifurcated such that it should not be served or responded to during liability discovery.  Additionally, the Court agrees with the principles in *Dean* set forth above, such that this patent infringement dispute is not the type of case in which bifurcated damages and liability discovery would make sense or lead to efficient case management.

The Court confirms that consistent with the Parties' currently in effect CMP—which does not bifurcate liability and damages discovery—**both Parties** are under an obligation to promptly respond to any damages discovery that has already been served.  As it relates to Snap Dock's pending motion, the Court grants Snap Dock's request such that E-Z Dock is ordered to respond to Snap Dock's previously served damages discovery **within 21 days** of this Order.

*10) Production related to E-Z Dock's Parent Company*

According to Snap Dock, E-Z Dock is a subsidiary of PlayPower, Inc. ("PlayPower") and E-Z Dock's day-to-day operations and issues in this case are handled by a PlayPower Senior Vice President.  [Dkt. 104 at 17.]  Thus, Snap Dock seeks PlayPower documents within E-Z Dock's possession, custody, or control.  [Dkt. 104 at 17.]

In response, E-Z Dock asserts that PlayPower was not excluded from its search for documents and, in support of that contention, submits two declarations from PlayPower executives that confirm that PlayPower was not excluded from E-Z Dock's search for documents in response to Snap Dock's requests.  [Dkts. 111 at 10-11; 111-10 at 3; 111-11.]  Specifically, the Declaration of the PlayPower executive that Snap Dock cites as key to this issue states, "Documents and information that could be considered in the possession, custody or control of PlayPower were not excluded from EZ Dock's investigation.  In searching for responsive documents and information, EZ Dock did not draw a distinction between EZ Dock documents in the possession of EZ Dock, and those in the possession of PlayPower."  [Dkt. 11-10 at 3.]

In light of E-Z Dock's attested representations, it appears that this is not an issue, and the Court denies Snap Dock's request to compel E-Z Dock to do anything further in response to this request.

*11) Potential Witnesses (Interrogatory No. 22)*

Snap Dock seeks for E-Z Dock to be compelled to give it the names of all former E-Z Dock engineers who have left the company in the last five years. [Dkt. 104 at 18.] It objects to E-Z Dock's attempt to limit this to the two engineers named as inventors on the '178 Patent. [Dkt. 104 at 18.]

In response, E-Z Dock argues that this request by Snap Dock is not proportional to the needs of the case. [Dkt. 111 at 17.] It emphasizes that the two inventors of the '178 Patent have already been identified and made available for depositions, and it alleges that Snap Dock seeks this additional information simply to "contact and harass individuals who are not involved with the issues in this case." [Dkt. 111 at 18.]

Governed by Federal Rule of Civil Procedure 33, interrogatories "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Any "grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4).

Snap Dock's interrogatory request at issue states:

> **INTERROGATORY NO. 22:** Identify all former E-Z-Dock engineers that have left the company in the last 5 years and provide their name, last known address, phone number, and email.

It is not apparent to the Court exactly how E-Z Dock answered this interrogatory, if at all. [*See* dkt. 105-6 at 6 (Letter from Snap Dock's counsel to E-Z Dock's counsel dated 11/14/22 and identifying Interrogatory 22 as one that E-Z Dock "has refused to answer").] Thus, E-Z Dock has not met its burden under Rule 33(b)(4) to state its objection to the interrogatory with specificity since it appears to not have answered at all.

17

That said, it is clear to the Court that E-Z Dock does not intend to provide additional information in response to this interrogatory beyond referencing the two engineers who left the company in the past five years who were involved in the '178 Patent (i.e., only Mr. Imel and Mr. Downs). The Court agrees with E-Z Dock that only engineers who left the company in the past five years who were involved in the '178 Patent need to be disclosed to render discovery proportional to the needs of this case. Thus, while the Court orders E-Z Dock to formally respond to Snap Dock Interrogatory #22 **within 21 days**, it agrees that E-Z Dock need only disclose departed engineers who left in the past five years and were involved in the '178 Patent.

**B.      E-Z Dock's Motion to Compel**

E-Z Dock also filed a Motion to Compel, asking the Court to order Snap Dock to produce certain types of documents that it contends are relevant to this case and proportional to the case needs. [Dkt. 106.] The Court will address each of E-Z Dock's five requests in turn.

*1) Snap Dock's Customer Information (Interrogatory Nos. 4-6 and Production Requests 12 and 16)*

E-Z Dock requests that the Court order Snap Dock to fully respond to certain interrogatories and document production requests seeking information and documents concerning the customers, distributors, and manufacturers of Snap Dock's accused product. [Dkt. 106-1 at 12.] E-Z Dock argues that the requested information about customers, distributors, and manufacturers is relevant to this patent infringement suit and that Snap Dock's concerns that E-Z Dock will use the information nefariously should be alleviated by the Stipulated Protective Order in this case. [Dkt. 106-1 at 13.]

In response, Snap Dock emphasizes that it is not refusing to provide its sales and financial information requested by the identified interrogatories and requests for production; rather, it is only objecting to providing the locations where the sales were made and the identities and location

of its customers because it fears E-Z Dock will use the information to harass those identified. [Dkt. 110 at 8.] Snap Dock emphasizes that E-Z Dock has no use for that information in this case because E-Z Dock's claims and damages will be fully litigated against Snap Dock, meaning that if E-Z Dock wins, it will receive a full recovery from Snap Dock and there is no need to involve distributors and customers. [Dkt. 110 at 8-9.]

The Court finds that Snap Dock's customer identifying information is relevant to E-Z Dock's claim for lost profits or a reasonable royalty. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 2018 WL 11268486, at *3 (M.D. Fla. Aug. 2, 2018) (emphasizing that the discovery rules "strongly favor full discovery whenever possible" and that the accused infringer's "customer identifying information is relevant to its claim for lost profits or a reasonable royalty"). Even if E-Z Dock's claims will be fully litigated against Snap Dock, the customer identifying information is relevant to lost profits and reasonable royalty issues tied to E-Z Dock's claims. *Id.* ("The requested customer information is important to the issues in this case in light of Plaintiff's request for recovery of lost profits, and the discovery of that information is important to resolving damages issues in this case."). The Court agrees with E-Z Dock's assertion that Snap Dock's concerns about potential misuse of that information should be alleviated by the Parties' Stipulated Protective Order, [dkt. 74], under which the information Snap Dock produces should be designated Highly Confidential – Attorneys' Eyes Only.

Accordingly, **within 21 days** of the date of this Order, Snap Dock is required to supplement its responses to Interrogatory Nos. 4-6 and produce documents responsive to Production Requests 12 and 16 consistent with the Court's ruling herein.

2)   *Information Concerning the Pricing of the Snap Port (Document Request No. 42)*

E-Z Dock requests that the Court order Snap Dock to respond to its request seeking documents concerning the price of the Snap Port.  [Dkt. 106-1 at 14.]  E-Z Dock claims that courts routinely find that pricing information is relevant and discoverable in similar situations.  [Dkt. 106-1 at 14-15.]

In response, Snap Dock emphasizes that it has produced its pricing for the Snap Port, but it is objecting to E-Z Dock's request that Snap Dock produce how Snap Dock set that pricing. [Dkt. 110 at 10.]  Snap Dock argues that information concerning how it set its pricing is irrelevant to a reasonable royalty damages theory and that E-Z Dock is simply seeking to harass and burden Snap Dock.  [Dkt. 110 at 10.]

E-Z Dock's document request at issue states:

> **DOCUMENT REQUEST NO. 42.** Documents sufficient to show how Snap Dock determined the price of the Snap Port, including the wholesale price(s) paid by Snap Dock's distributors and the retail price(s) paid by consumers.

While neither side's position is entirely convincing, the Court can see scenarios under which a price-setting methodology that Snap Dock has for the Snap Port—if such methodology exists— could be relevant to damages calculations and the hypothetical negotiation framework for determining a reasonable royalty as set forth in *Georgia-Pacific*. *See* 318 F. Supp. at 1116 (Factor 15 describing the hypothetical negotiation framework).  Thus, the Court orders Snap Dock to produce documents related to any price-setting methodology for the Snap Port, if such documents exist.  Snap Dock is required to produce documents consistent with this ruling **within 21 days** of the date of this Order or otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

*3)  Information Concerning Snap Dock's Dealer Book (Document Request No. 28)*

E-Z Dock requests that the Court order Snap Dock to produce documents concerning the

Snap Dock Dealer Book, which E-Z Dock says is relevant to one of E-Z Dock's affirmative

defenses.  [Dkt. 106-1 at 15-16.]   Its affirmative defense alleges that Snap Dock's allegedly

unclean hands is proven by its Dealer Book, which E-Z Dock alleges includes images of E-Z Dock

products that Snap Dock attempts to pass off as Snap Dock Products.  [Dkt. 106-1 at 16 (citing

dkt. 41 at 28).]

Snap Dock argues that the Dealer Book is irrelevant to E-Z Dock's patent infringement

claim and that E-Z Dock's unclean hands defense is a "pseudo unfair and deceptive trade practices

and unfair competition claim" that was already decided in Snap Dock's favor by the Florida court.

[Dkt. 110 at 11.]

E-Z Dock's document request at issue states:

> **DOCUMENT REQUEST NO. 28.** All documents concerning the Snap Dock
> Dealer Book available at https://fliphtml5.com/yebyk/catz and filed in this case at
> ECF No. 41-1.

The Court agrees with E-Z Dock that Snap Dock has not adequately explained why it should not

have to produce documents related to its Dealer Book in response to this request.  The Dealer Book

is clearly relevant given its subject matter and E-Z Dock's reliance on it as part of an affirmative

defense, and Snap Dock has not demonstrated that the requested discovery is of such marginal

relevance to not require production under proportionality principles.  Thus, Snap Dock is required

to produce documents consistent with this ruling **within 21 days** of the date of this Order or

otherwise affirmatively state to E-Z Dock that it has already done so or that none exist.

4) *Request for Snap Dock to Identify Corresponding Bates numbers for Produced Documents*

E-Z Dock alleges that Snap Dock engaged in a classic document dump in this litigation, producing more than 80,000 pages of production on the last day to complete document production, which was in stark contrast to the 222 documents in total that it had produced up until that point. [Dkt. 106-1 at 16-17.]  E-Z Dock emphasizes that the documents appear to be from nine different companies—Snap Dock plus eight others—that are mixed together and include documents about beer tubes, hockey skates, and dental guards that have nothing to do with this case.  [Dkt. 106-1 at 17-18.]  E-Z Dock asks this Court to compel Snap Dock 1) to identify by Bates numbers all documents in the production that are relevant to Snap Dock (as opposed to the other eight businesses) and 2) identify the Bates numbers responsive to each of E-Z Dock's document requests. [Dkt. 106-1 at 18.]

Snap Dock opposes E-Z Dock's request, emphasizing that it produced these documents in a timely manner consistent with the Parties' discovery plan that followed the Court's October 13, 2022 Discovery Conference.  [Dkt. 110 at 12.]  Snap Dock states that its production was made by identifying custodians likely to have responsive information and then using search terms to capture responsive documents.  [Dkt. 110 at 12.]  Snap Dock contends that E-Z Dock has proven it is able to sort through the produced documents, since it points to ones that it deems irrelevant.  [Dkt. 110 at 12.]

Federal Rule of Civil Procedure 34(b)(1)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  The practical application of this requirement is as follows:

> Essentially, the Federal Rules of Civil Procedure require that the producing party give some structure to its production: a party may not dump voluminous, poorly organized documents on its adversary and force him or her to rummage through piles of paper in search of what is relevant. To comply with the rule, a party must rationally organize its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to the production requests.

*Outzen v. Kapsch Trafficcom USA, Inc.*, 2021 WL 3673786, at *6 (S.D. Ind. Aug. 19, 2021), objections overruled, 2022 WL 2703847 (S.D. Ind. July 11, 2022).

The Court agrees with Snap Dock that it produced the 80,000 pages of discovery within the timeline set forth by the Parties after the October 2022 Discovery Conference with the Court. That is hardly an act that deserves praise, however, because Snap Dock (and E-Z Dock) should have produced its responsive documents long before it reached the point of needing the Court's intervention last October.

Snap Dock does not contend that it produced the 80,000 pages of discovery in November 2022 as they were kept in the usual course of business.  Thus, pursuant to Rule 34(b)(1)(E)(i), Snap Dock had to "organize and label them to correspond to the categories in the request."  Snap Dock does not even attempt to argue that it did this.  It is clear to the Court that Snap Dock made a classic document dump on E-Z Dock in November by producing 80,000 pages of documents from nine different companies in an apparently unorganized fashion that included completely irrelevant documents related to products such as beer tubes, hockey skates, and dental guards. Those documents are clearly outside the scope of anything remotely relevant to this patent infringement case about docks.  Snap Dock's unnecessarily voluminous and haphazard production is unacceptable, and Snap Dock is on notice that it will be subject to sanctions if it does anything like that again in the future.

For these reasons, the Court grants E-Z Dock's request in part, such that Snap Dock is required to identify for E-Z Dock which documents from its 80,000-page production are relevant

to Snap Dock, not to the other eight companies.  The Court further orders Snap Dock to provide some sort of production key or other method of complying with Rule 34(b)(1)(E)(i)'s requirement that Snap Dock "organize and label them to correspond to the categories in the request."  While Snap Dock need not necessarily identify Bates numbers, it must "rationally organize its productions, so that the requesting party may readily identify documents, including ESI, that are responsive to the production requests."  *Outzen*, 2021 WL 3673786, at *6.  Snap Dock is required to comply with this requirement within **21 days** of the date of this Order.

5) *Request for Snap Dock to Provide Information Regarding Lost or Deleted Documents*

E-Z Dock has additional concerns about Snap Dock's production because a previously identified post from Snap Dock's Facebook page about the Snap Port is not included in Snap Dock's production.  [Dkt. 106-1 at 9-10.]  That post garnered a comment by someone that the picture of the Snap Port "looks like EZ Dock[,]" but the comment was later deleted.  [Dkt. 106-1 at 9.]  E-Z Dock notes that Snap Dock neither described how the comment was deleted nor complied with Instruction No. 7 of E-Z Dock's document requests, which applies to documents no longer in Snap Dock's possession or subject to its control.  [Dkt. 106-1 at 18-19.]

In response, Snap Dock claims that E-Z Dock has manufactured the dispute over the omitted document, claiming that the Facebook comment at issue was from an employee or contractor of E-Z Dock.  [Dkt. 110 at 13.]  Snap Dock contends that there is no relevant dispute here, given that E-Z Dock has a copy of the Facebook post and comment at issue, as evidenced by its brief.  [Dkt. 110 at 13.]

The Facebook comment at issue is clearly relevant to E-Z Dock's patent infringement case, even if the comment was made by someone with ties to E-Z Dock.  The bias that Snap Dock insinuates that commentor possesses does not remove the post or the comment from the sort of

relevant discovery to which E-Z Dock is entitled.  Thus, **within 21 days** of this Order, Snap Dock either must produce any relevant documents it has related to that Facebook post or comply with Instruction No. 7 in E-Z Dock's document requests, which applies to documents no longer in Snap Dock's possession or subject to its control.

## IV.  CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** and **DENIES IN PART** Snap Dock's Motion to Compel, [dkt. 103], and **GRANTS IN PART** and **DENIES IN PART** E-Z Dock's Motion to Compel, [dkt. 106].  Each Party won some of the issues it raised and lost others in these wide-ranging and at times complex competing motions to compel.  The Court finds that each Party's opposition to the other Party's Motion to Compel was substantially justified such that the Court will not award either party fees or expenses at this time.  That said, the Court expects counsel for both Parties to do a better job working together and to comply with the Court's expectations for discovery as set forth in the October 2022 and January 2023 Discovery Conferences.  Failure to do so may result in sanctions.

At the upcoming Status Conference on February 8, 2023, among other things, the Court will discuss scheduling a Settlement Conference, and counsel should be prepared with available dates and a preference regarding whether such conference would be most productive in person in Indianapolis or via Zoom.

**IT IS SO ORDERED.**

Date: 1/31/2023

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

Electronic distribution to all counsel of record